**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE**
**FEDERAL CIRCUIT**

| | : | |
|---|---|---|
| In re | : | Case No. |
| LAWRENCE BRENNER, | : | |
| | : | **PETITION FOR WRIT OF** |
| *Petitioner,* | : | **MANDAMUS/PROHIBITION** |
| | : | |

Petitioner, Lawrence Brenner, by and through his attorneys, Wolin & Wolin, hereby petitions the court for the issuance of a Writ of Mandamus/Prohibition directed to the Merit Systems Protection Board pursuant to Federal Rule of Appellate Procedure Rule 21 and Federal Circuit Rule 21.

## I.    THE RELIEF SOUGHT

Petitioner seeks a Writ of Mandamus/Prohibition directed to the Merit Systems Protection Board (hereinafter "Board") in which he seeks to compel the vacatur of the Board's Remand Order dated April 2, 2024, in which the Board, *inter alia*, granted the Department of Veterans Affairs' (hereinafter "Agency") Petition for Review, vacated the Initial Decision of Maria Dominguez, Administrative Judge, dated October 20, 2021 and remanded the case to the Board's New York Field Office for further adjudication in accordance with the Remand Order. (**Exhibit A**)

Upon the vacatur of the Board's Remand Order, petitioner respectfully requests that the court remand the case to the Board for a new remand decision in accordance with this court's precedents and established authority.

Petitioner also seeks a stay of all proceedings in the Board, including the currently scheduled hearing, pending a determination of the issues herein.

## II.    ISSUES PRESENTED

The issues presented are:

1.    Whether the Board's Remand Order justifies the issuance of a Writ of Mandamus/Prohibition.

2.    Whether the court should issue a Writ of Mandamus/Prohibition directed to the Board because such a writ will aid in the court's appellate jurisdiction in this and other cases.

3.    Whether the circumstances herein warrant the issuance of a Writ of Mandamus/Prohibition.

4.    Whether petitioner can otherwise obtain adequate relief.

5.    Whether the Board's Remand Order constituted a usurpation of power.

6.    Whether the Board's Remand Order was such a clear abuse of discretion that it led to a patently erroneous result.

7.      Whether the Board's Remand Order was so significantly erroneous that it would likely recur.

8.      Whether there are novel or important legal issues that justify the issuance of the requested writ.

9.      Whether petitioner is entitled to have the Board's Remand Order vacated with instructions by the court to the Board together with such other relief as this court deems appropriate.

Petitioner submits that all of the above must be answered in the affirmative.

## III.   FACTS UPON WHICH THIS APPLICATION IS BASED

### A.      BACKGROUND

On March 26, 2018, Kathleen Oddo, Chief Counsel, Collections National Practice Group ("CNPG"), proposed to remove petitioner from his position as a General Attorney, GS-0905-14, Step 10 with CNPG. Ms. Oddo proposed petitioner's removal under the authority of 38 U.S.C. § 714 (the "Act").

More specifically, Ms. Oddo claimed that, for the rating period 10/1/16-9/30/17, petitioner performed unacceptably in the critical elements of Timeliness (Charge I) and Professional Responsibility and Accountability (Charge II).  Ms. Oddo also asserted that petitioner's performance was

unacceptable in the critical element of Timeliness for the rating period beginning on 10/1/17 (Charge III). Petitioner duly submitted a written reply to Ms. Oddo's proposal in a letter with attachments dated April 6, 2018.

In a Decision dated September 28, 2018, Richard J. Hipolit, Deputy General Counsel for Veterans' Programs (the "Deciding Official"), upheld the proposal and determined that petitioner be removed effective September 28, 2018. Mr. Hipolit opined that substantial evidence supported the decision.

Petitioner, thereupon, duly appealed his termination to the Board on October 5, 2018. A hearing was held on December 12 and 13, 2018.

### B.    THE FIRST INITIAL DECISION

In an Initial Decision dated March 18, 2019 (**Exhibit B**), the administrative judge affirmed the agency's removal action. In doing so, the administrative judge applied the dictates of 38 U.S.C. § 714. For example, the administrative judge determined that "to sustain an adverse action under 38 U.S.C. § 714, the agency must prove its charges by substantial evidence." The administrative judge noted that this is "a lower standard of proof than preponderance of the evidence." The administrative judge also concluded, *inter alia*, that the Board "has no authority to mitigate an action taken under Section 714 of Title 38 and the reasonableness of an imposed penalty along with a consideration of mitigating and aggravating

factors under <u>Douglas v. Veterans Administration</u>, 5 M.S.P.R. 280, is immaterial."

The Initial Decision became final on April 22, 2019. Thereupon, petitioner duly filed a Petition for Review with this court. He did not request Board review of the Initial Decision.

### C.    THE COURT'S PRIOR REVIEW

On March 31, 2020, while the Petition for Review was pending before this court, the court issued a decision in <u>Sayers v. Department of Veterans Affairs</u>, 954 F.3d 1370 (Fed Cir 2020). This court concluded, *inter alia*, that 38 U.S.C. § 714 cannot be applied retroactively and that the Board must review the reasonableness of the penalty as part of its standard of review.

In his brief to this court, petitioner argued, *inter alia*, that the application of the substantial evidence standard in the case was improper; the removal could not be sustained on the merits; the agency and the administrative judge had improperly applied the Act retroactively; and the Act did not prohibit the Board from reviewing the reasonableness of a penalty.

Thereupon, in a decision dated March 9, 2021, this court held that the Board erred in concluding that the Act prohibited it from reviewing the reasonableness of the penalty and that the agency and the Board improperly applied the Act to petitioner's actions that occurred prior to the effective date of

the Act, which was June 23, 2017.  The court vacated the Board's decision and remanded the case to the Board on the evidence of record. <u>Brenner v. Department of Veterans Affairs</u>, 990 F.3d 1313 (Fed Cir. 2021).

On August 12, 2021, after this court's decision in <u>Brenner</u>, this court decided <u>Conner v. Department of Veterans Affairs</u>, 8 F.4th 1319 (Fed Cir 2021) and <u>Rodriguez v. Department of Veterans Affairs</u>, 8 F.4th 1290 (Fed Cir 2021). The court, in <u>Conner</u>, held that the agency and the Board must apply the <u>Douglas</u> factors in considering the reasonableness of the penalty imposed under 38 U.S.C. § 714.  In <u>Rodriguez</u>, the court held that the burden of proof to be applied by the agency in an action taken under section 714 is "preponderant evidence" as opposed to "substantial evidence."

### D.    THE SECOND INITIAL DECISION

Having the benefit of these cases, in an Initial Decision dated October 20, 2021 (**Exhibit C**), the administrative judge reversed the agency's decision to remove petitioner from his position.  In so doing, the administrative judge applied this court's precedent and ruled that the agency failed to prove its three charges by preponderant evidence, and that it failed to prove that it considered the relevant <u>Douglas</u> factors. Hence, the administrative judge concluded that the removal action "<u>must be reversed because it was not taken in accordance with</u>

law." (Emphasis added) In doing so, the administrative judge ordered the agency to cancel the removal and to retroactively restore petitioner effective September 28, 2018; no later than 20 calendar days after the date the Initial Decision was to become final. In doing so, the administrative judge specifically declined to order interim relief pursuant to 5 U.S.C. § 7701(b)(2)(A) "because it is not available for prevailing Appellants in appeals of removal taken under 38 U.S.C. § 714. *See*, 38 U.S.C. § 714(a)(7)."

The agency did not reinstate petitioner and, instead, filed a Petition for Review on November 22, 2021.

### E.    THE AGENCY'S PETITION FOR REVIEW

In its Petition for Review, the agency asserted that "the Initial Decision erroneously applies the law to the facts of this case and contains erroneous findings of material fact." The agency set forth four (4) specific arguments. They were:

> (1)    the administrative judge's application of the "not in accordance with law" analysis is an erroneous application of the law. Rather, the administrative judge was required to apply the "harmful error" analysis;
>
> (2)    the administrative judge's rejection of additional testimony and failure to permit the deciding official to determine whether the decision is supported by preponderant

evidence conflicts with the Federal Circuit's remand instructions in *Rodriguez*;

(3)    the administrative judge's finding that the deciding official did not consider the relevant *Douglas* factors is an erroneous finding of material fact; and

(4)    the administrative judge's holding that the deciding official's failure to consider relevant *Douglas* factors renders the decision "not in accordance with law" was an erroneous application of the law.

Petitioner duly opposed the agency's Petition for Review. He argued that the agency   gave a strained and unwarranted interpretation to cases distinguishing between "not in accordance with law" and "harmful error" to assert that the administrative judge "improperly reviewed the agency's action as 'not in accordance with law.'"

Petitioner asserted that "not in accordance with law" standard was properly utilized by the administrative judge in reversing the agency action. In summary, petitioner argued that the agency's failure to use the correct standard of proof rendered the decision "not in accordance with law" and that its failure to review relevant <u>Douglas</u> factors also rendered the agency decision "not in accordance with law."

**F.    THE BOARD'S REMAND ORDER**

In the Remand Order dated April 2, 2024, the Board, *inter alia*, granted the

agency's Petition for Review, vacated the Initial Decision and remanded the case to the Board's New York Field Office for further adjudication in accordance with the Remand Order.

In its Remand Order, the Board agreed with the agency that the agency's failure to apply the correct standard of proof does not render a decision "not in accordance with law" and that the administrative judge should have analyzed the error under the harmful procedural error framework. (Exhibit A, p. 9) In doing so, the Board cited <u>Semenov v. Department of Veterans Affairs</u>, 2023 MSPB 16, wherein the Board held that actions taken under 38 U.S.C. § 714 are subject to the harmful error test from 5 U.S.C. § 7701[c][2]. The Board continued "As such, the proper inquiry here is whether the agency's error in applying the incorrect standard of proof was likely to have caused the agency to reach a different conclusion from the one it would have reached in the absence or cure of the error."

The Board vacated the Initial Decision and remanded the appeal for the administrative judge to consider whether the agency committed harmful error and placed the initial burden of doing so upon petitioner. The Board, in the Remand Order, stated that if the administrative judge determined that the error in applying the incorrect standard of proof was not harmful, then the

"subsequent analysis is whether the agency met its burden of proof with respect to the charges before the Board." (Exhibit A, p. 9-10)

The Board, in the Remand Order, also rejected the administrative judge's finding that the deciding official's declaration, which was made after this court's decision and which claimed that he considered the Douglas factors, was "unworthy of belief."  The administrative judge had ruled as such because the deciding official had previously testified that he did not consider the Douglas factors. The administrative judge had, therefore, concluded that the agency failed to prove that the penalty of removal was supported by the preponderance of the evidence, thereby rendering the removal action "not in accordance with law."

The Remand Order rejected the administrative judge's rationale and held "Thus, although the deciding official may not have completed a Douglas factor worksheet or some formal analysis similar thereto, he asserts that he nonetheless considered the substance of the factors and we believe the record supports that assertion." The Board then held, "Accordingly, on remand, if applicable, the administrative judge should consider whether the penalty of removal is supported by substantial evidence based on the sustained conduct that post-dates the VA Accountability Act." (Exhibit A, p. 13)

The Remand Order then ordered the following:

For the reasons discussed above, we remand this case to New York Field Office for further adjudication in accordance with this Remand Order. As outlined above, the administrative judge shall first address whether the agency's error in applying the substantial evidence standard of proof to its original action was harmful. *See* 5 U.S.C. § 7701(a)(1), (b)(1); *Semenov*, 2023 MSPB 16, ¶ 24.

If the administrative judge determines that the agency's error was not harmful, she should then consider whether the agency proved its charges by substantial evidence based only on evidence that postdates the June 23, 2018 effective date of the VA Accountability Act, and, if so, whether the penalty of removal is supported by substantial evidence and in accordance with *Connor*. In conducting this adjudication, the administrative judge shall hold a supplemental hearing but may limit the subject matter to issues deemed relevant on remand. She shall then issue a remand initial decision discussing these issues. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests). (Exhibit A, p. 13)

The administrative judge adopted these findings and a hearing is scheduled for July 18-19, 2024. (**Exhibit D**)

## IV.    REASONS WHY THE WRIT SHOULD ISSUE

### A.    STANDARDS OF REVIEW

The ability of courts to issue writs of mandamus and prohibition has long been established. The All Writs Act, 28 U.S.C. § 1651, authorizes courts to issue writs in their discretion. The petitioner seeking the writ must show that the writ will be in aid of the court's appellate jurisdiction, that exceptional circumstances warrant the exercise of the court's discretionary power; and that adequate relief cannot be obtained in any other forum. U.S. Alkali Export Assn. v. United States, 325 U.S. 196, 201-02 (1945); De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212 (1945). "Judicial usurpation of power" or a "clear abuse of discretion" will justify the issuance of a writ. Will v. United States, 389 U.S. 90, 95 (1967); Bankers Life and Casualty Co. v. Holland, 346 U.S. 379, 383 (1953).

More recently, the Supreme Court, in Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 380-81 (2004), set forth three conditions that may be met before a writ can issue. A party must establish that (1) "no other adequate means [exist] to attain the relief he desires;" (2) the party's right to issuance of the writ is "clear and indisputable;" and (3) "even if the first two prerequisites have been met," the court, "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."

The Court in Cheney, in setting forth these parameters, noted that,

although "[T]he traditional use" of the writ was to confine the court against which mandamus is sought "to a lawful exercise of its prescribed jurisdiction" courts "have not 'confined themselves to an arbitrary and technical definition of jurisdiction.'" Id. at 380; Will v. United States, 389 U.S. 90, 95 (1967). Rather, a petitioner can show that there was a "clear abuse of discretion" Bankers Life & Casualty Co. v. Holland, supra. at 383, or a judicial "usurpation of power." De Beers Consolidated Mines, Ltd. v. United States, supra. at 217.

The Supreme Court decision in La Buy v. Howes Leather Co., Inc., 352 U.S. 249 (1957) is also instructive. There, the Supreme Court confronted the question of the power of the United States Court of Appeals to issue a writ to compel a trial court to vacate a previous order. In holding that the Court of Appeals can do so, the Supreme Court rejected the contention that the Court of Appeals cannot issue writs to review interlocutory orders, except in those cases when review of the case on appeal after final judgment would be frustrated. Id. at 250-51. In doing so, the Supreme Court held that Courts of Appeals could issue writs under such circumstances "in aid of jurisdiction," since, at some stage, the Court of Appeals could entertain appeals in that same case. Id. at 255. Such a writ, noted the court, could be issued in "the sound discretion of the court." Id. In essence, the court approved the writ as a "supervisory control of the District Courts by

the Courts of Appeals." Id. at 259-60. Thus, writs issued in aid of future appellate jurisdiction are justified and appellate intervention is required to prevent the frustration or obstruction of possible later appellate review. FTC v. Dean Foods Co., 384 U.S. 597 (1966).

Based upon the foregoing, the Supreme Court has opined that the ability of Courts of Appeals to issue writs goes beyond merely confining an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority. The Supreme Court has taken a more expansive view of the ability of Courts of Appeals to issue writs and "have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of jurisdiction." Kerr v. United States District Court for the Northern District of California, 426 U.S. 394, 402 (1976).

As a result of these cases, the concept of "supervisory mandamus" and "advisory mandamus" have evolved. La Buy v. Howes Leather Co., Inc., supra., established a model of appellate mandamus whereby the Court of Appeals has supervisory control over a lower tribunal and can vacate the lower tribunal's order upon a writ. By concluding that "supervisory control of the District Courts by the Court of Appeals is necessary to proper judicial administration in the federal system." Id. at 259-60, the La Buy court indicated that it could, upon a

writ, vacate an order that is so significantly erroneous that the error would likely recur.

The concept of "advisory mandamus" was expounded upon by the Supreme Court in <u>Schlagenhauf v. Holder</u>, 379 U.S. 104 (1964). This holding, which represented a further expansion of the availability of mandamus, permits interlocutory review of novel or important legal questions. The Court there determined that the existence of novel or important legal issues represented the unusual circumstances "justifying the issuance of a writ." <u>Id</u>. at 110. The Court then can address issues of significant interest prior to appellate review in order to avoid erroneous repetition in other cases. The utilization of the writ in this context gives lower tribunals guidance so that alleged non-jurisdictional errors will not be repeated in other cases. In other words, the Court of Appeals can issue writs instructing lower tribunals to rule on a particular issue in a certain way where the lower tribunal's actions are certainly erroneous as a matter of law, where the ruling evidences a divergence of prior decisions and which implicate novel and important issues.

The United States Court of Appeals for the Federal Circuit has not been hesitant to adopt the more expansive concepts in issuing writs. For example, in <u>Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.</u>, 717 F.2d 1374,

1379 (Fed. Cir. 1983), the court held it was "authorized to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1631(a) as "necessary or appropriate in aid of 'our jurisdiction.'" The court in <u>Margolis v. Banner</u>, 599 F.2d 435 (Ct. Customs & Patent Appeals, 1979) recognized that it could issue a writ in aid of future appellate jurisdiction or where appellate intervention is required to prevent the frustration or obstruction of later appellate review.

The court in <u>In re Calmar, Inc.</u>, 854 F.2d 461, 464 (Fed. Cir. 1988) cited <u>Mississippi Chemical</u>, <u>supra</u>., and held that mandamus may be employed to correct a clear abuse of discretion or usurpation of judicial power by the lower tribunal. *See also*, <u>In re Laitram Machinery, Inc.</u>, 52 F.3d 343 (Fed. Cir. 1995).

The Court of Customs and Patent Appeals, in <u>United States v. Boe</u>, 543 F.2d 151, 158 (1976) explained its role:

> In what case such a writ is warranted by the principles and usages of law it is not always easy to determine. Its use has been very much extended in modern times, and now it may be said to be an established remedy to oblige inferior courts and magistrates to do that justice which they are in duty, and by virtue of their office, bound to do. ... One of its peculiar and more common uses is to restrain inferior courts and to keep them within their lawful bounds. ... Having found, however, that the trial court has stepped beyond its 'lawful bounds,' we must perform the function which devolves upon us in such circumstances.

Thus, this court has ruled that when presented with a writ, the court's task "is to determine whether the lower tribunal's decision was such a clear abuse of discretion that it led to a patently erroneous result." In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2008). *See also*, In re Juniper Networks, 14 F.4th 1313, 1318 (Fed. Cir. 2021).

## B.    THE NEED FOR THE ISSUANCE OF THE WRIT

An application of the foregoing authority to the facts and circumstances of this case justifies the issuance of the requested writ. The court should issue the requested writ directed to the Board because the writ will ultimately aid in the court's appellate jurisdiction. Moreover, petitioner will have no other adequate means of relief. Petitioner also asserts that the Remand Order constitutes such an abuse of discretion that it led to a patently erroneous result which cannot be properly addressed on an ultimate appeal from a Final Order of the Board. Along these lines, the Board's Remand Order was so significantly erroneous that the same error is likely to recur in this and other cases before the Board. Very simply, the Board overstepped its bounds in the Remand Order.

### 1.    The Remand Order Conflates the Respective Burdens of Proof

The Board, in its Remand Order, stated:

> Therefore, on remand, if the administrative judge determines that the agency's error in applying the incorrect standard of proof to its internal review of the removal action was not harmful, then she must consider whether the agency proved by substantial evidence its three charges of unacceptable performance based only on evidence of record that postdates the June 23, 2017 effective date of the VA Accountability Act. (Exhibit A, p. 10-11)

This conclusion, in and of itself, represents such a departure from established procedure that the court must intervene. Any other result would subject petitioner to a totally unfair framework that would be difficult to overcome in an appeal after a final Board order. The Board, by so holding, arbitrarily shifted the burden of proof to petitioner to initially establish harmful error, which is an affirmative defense to be applied after the agency fulfills its burden of proof. The initial burden of proof should be on the agency to prove its case by the required degree of evidence – not on petitioner to first establish harmful error. The Remand Order totally conflated the respective burdens of proof. This conclusion by the Board could have a profound affect on all future cases. The Board placed the initial burden on petitioner to prove an affirmative defense, before even considering whether the agency met its burden of proof.

**2.    The Remand Order Did Not Apply the "Not in Accordance with Law" Standard**

The Remand Order also irreparably prejudices petitioner's ability to defend his termination by declaring that the "harmful error" analysis must be used to the exclusion of the "not in accordance with law" standard in assessing the agency's failure. This decision, which was based entirely on Board precedent, Semenov. Department of Veterans Affairs, totally disregards this court's established precedent as well as statute.

Contrary to the Remand Order, 5 U.S.C. § 7701 is inclusive. It provides that the "harmful error" standard **or** "not in accordance with law" standard may be used. 5 U.S.C. § 7701 provides:

> (2)   Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment—
>> (A) shows harmful error in the application of the agency's procedures in arriving at such decision;
>> (B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or
>> (C) shows that the decision was not in accordance with law.

The Remand Order's direction that the administrative judge be mandated to only use the "harmful error" analysis usurps both statutory and decisional authority, including this court's mandate in Brenner v. Department of Veterans

Affairs, supra. In fact, this court in Brenner already established the viability of

the "not in accordance with law" standard to this case. It held:

> The VA erroneously applied the Act retroactively. Accordingly, the MSPB's affirmance of the VA's action is not in accordance with law. We 'vacate [Mr. Brenner's] removal and remand to the [MSPB] for further proceedings' to consider whether the 'VA's removal decision' under 38 U.S.C. § 714—'including the penalty'—is supported by substantial evidence on the evidence of record that post-dates the Act. *Sayers*, 954 F.3d at 1373, 1378; *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (providing that "remand to the agency for additional investigation or explanation" is appropriate where "the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it"). If the Government wishes to rely on evidence of record that pre-dates the Act, it must proceed in accordance with Chapter 75 or Chapter 43. Id. at 1330.

At another point in the Brenner decision, this court held:

> Second, the Government argues that *Sayers's* holding concerning penalty review does not extend to Mr. Brenner's removal because, unlike the petitioner in *Sayers* who was removed for misconduct, "[Mr. Brenner] was removed for poor performance." Respondent's Br. 45. This argument is unpersuasive. It is without basis in the Act, which draws no distinction between the procedures and protections afforded an employee removed for poor performance, misconduct, or some unhappy combination of both. *See generally* 38 U.S.C. § 714. In particular, it fails to acknowledge that

> the Act allows for the MSPB to review the VA's action for "accordance with law," 5 U.S.C. § 7701(c)(2)(C); *see* 38 U.S.C. § 714(d)(1), and expressly provides for Federal Circuit review of an agency's action for accordance with law, abuse of discretion, and arbitrary and capricious decision making, *see* 38 U.S.C. § 714(d)(5)(A); *see also* 5 U.S.C. § 7703(c), regardless of whether the penalty is imposed for misconduct or poor performance. Id. at 1329.

The Remand Order does not explain why the "not in accordance with law" standard is inappropriate. Its decision that the harmful error analysis must be used, to evaluate the agency's failure, based only upon Board precedents, totally ignores the statute and this court's precedents.

There are apparently many cases pending with the Board in which it has applied a similar analysis citing Semenov. The court must intervene at this juncture to prevent petitioner and others similarly situated from being subject to an unlawful framework, which will severely prejudice petitioner's ability to appeal, if necessary, and others. By intervening now, the court will aid itself in any ultimate appeal.

Further support for petitioner's argument concerning the applicability of the "not in accordance with law" standard can be found in other Federal Circuit precedent. This Court discussed the distinction in McCollum v. N.C.U.A., 417 F.3d 1332 (Fed Cir 2005). It held:

> We would add only that paragraphs [A] and [C] (of 5
> U.S.C. § 7701[c][2]) are not directed to the same end.
> Harmful error in procedures (paragraph A) raises the
> question – Did the wrongful procedure harm the
> employee in the presentation of his defense so that a
> different result might have been reached? Paragraph C,
> on the other hand, is directed to the decision itself. Was
> the decision in its entirety in accordance with law. Id.
> at 338

In McCollum, the court concluded that harmful error can occur with reference to a specific procedure to which the employee is entitled as part of his defense. Its reach is narrower than the "not in accordance with law" standard, which addresses the substantive decision itself.

This distinction had been previously clarified by the Federal Circuit in a concurring opinion in Baracco v. FAA, 735 F.2d 488 (Fed Cir 1984). In that case, the employee asserted that he was given only six days to reply to the proposed adverse action. The concurring opinion noted that harmful error "raises the question: Did the wrongful procedures harm the employee in the presentation of his defense so that a different result might have been reached?" Paragraph [C] "On the other hand, is directed to the decision itself." (emphasis added)

In Handy v. U.S.P.S., 754 F.2d 335 (Fed Cir 1985), the court further discussed the distinction. This case involved the employee's request for an oral reply. The court emphasized that such an argument invokes the harmful error

standard because it concerns <u>an allegation of procedural error</u> and that the procedural error affected the agency's decision.

The Board's discussion in <u>Stephen v. Department of the Air Force</u>, 47 M.S.P.R. 672 (1991) was similar. There, the Board emphasized that harmful error applies in the application of the agency's procedures in arriving at a decision. The Board, in <u>Stephen</u>, did not limit the application of the "not in accordance with law" standard to only actions where an agency has no legal authority for taking an action.

The "harmful error" analysis is much more limited than the Remand Order would suggest. It only applies to situations involving the procedure offered to the employee in defending the action – not to the decision itself, which was the case herein.

The failure of the agency to apply the correct burden of proof went to the decision itself and not to a procedure available to petitioner in defense of the adverse action. It was, thus, not in accordance with law.

The administrative judge, in her Initial Decision, which was the subject matter of the Remand Order, ruled:

> Here, there is no dispute that the agency's action was effected under a substantial evidence test. The VA had no legal authority to take an action under § 714 based

> merely on substantial evidence. Because I find that the agency failed to apply the correct burden of proof (*i.e.,* preponderant evidence) or consider the relevant <u>Douglas</u> factors in determining the penalty of removal for unacceptable performance in the critical elements of 'timeliness' and 'professional responsibility and accountability,' I must reverse the decision as not in accordance with law. (Exhibit C, p. 13-14)

This analysis was the correct one and the administrative judge did not confuse the issues, as the Remand Order states. The court must intervene before the Board issues a Final Order to prevent the total deprivation of petitioner's due process.

### 3.     The Douglas Factor Issue

The Remand Order also totally ignored this court's application of the <u>Douglas</u> factors. Again, this court must intervene to remedy a gross abuse of discretion and the Board overstepping its bounds.

The Remand Order disregarded this court's decision in <u>Brenner</u>. In <u>Brenner</u>, the court concluded that the agency's removal action was "not in accordance with law." <u>Id</u>. at 1323-25. The court held:

> Indeed, the Act encompasses MSPB review of an agency's action for accordance with law, including whether the Secretary's "final decision with respect to a removal, demotion, or suspension under [38 U.S.C. § 714]" provides "specific reasons" for the chosen penalty. <u>Id</u>. at 1323.

The court also noted that "[T]he Federal Circuit ... shall review the record and hold unlawful and set aside any agency action, finding or conclusions found to be," *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. at 1324. The court continued "An agency abuses its discretion where, *inter alia*, 'the decision ... represents an unreasonable judgment in weighting relevant factors.'" (Citations omitted) Id.

The Federal Circuit then specifically stated:

> In reviewing his appeal, the MSPB did not consider the penalty, only whether the underlying charges were supported by substantial evidence. <u>This was not in accordance with law</u>. (Emphasis added) Id. at 1325.

Following this court's remand, the administrative judge concluded:

> In light of my finding that the agency failed to prove its charges by preponderant evidence, I need not decide whether the VA properly considered the reasonableness of the removal penalty pursuant to *Connor*. However, assuming I had found that the agency's charges were supported by preponderant evidence, I would nonetheless find that the agency failed to consider the *Douglas* factors, as required by *Sayers* and the Court's decisions in *Brenner* and *Connor* and hence, <u>that its decision was not in accordance with law</u>. (Exhibit C, p. 9) (Emphasis added)

The administrative judge's decision was totally in accord with this court's <u>Brenner</u> decision. Unfortunately, the Remand Order totally and improperly

abrogated this court's mandate. That constitutes and overstepping of bounds by the Board.

There was much in the hearing record to support the administrative judge's conclusion. During his cross-examination, Mr. Hipolit was asked, point blank, whether he considered the <u>Douglas</u> factors. He replied that he did not consider the <u>Douglas</u> factors. There is also nothing in his decision letter indicating that he had considered the <u>Douglas</u> factors in assessing the appropriate penalty to be imposed.

The agency then attempted damage control. The agency was permitted to introduce declarations by Mr. Hipolit and Ms. Oddo, despite this court's clear instruction that the remand  was to be on "the evidence of record." The result was the introduction of self-serving declarations which were submitted without petitioner having the opportunity to cross-examine them.

Mr. Hipolit and Ms. Oddo were less than truthful when they stated that they considered the <u>Douglas</u> factors. It must be noted that the deciding official never completed a <u>Douglas</u> worksheet  or consider mitigating circumstances. Moreover, contrary to his assertion in his declaration, there was also absolutely nothing in his testimony which indicated that he considered <u>Douglas</u> factors. His direct examination was totally lacking in any testimony that he considered the

factors.  As already noted, on cross-examination, he testified that he did not consider the Douglas factors.  During his testimony, he also conceded that he did not even consider petitioner's disability in his deliberations which should have been considered as a mitigating factor.  *See*, VanFossen v. Department of HUD, 748 F.2d 1579 (Fed Cir 1984), which states "failure to consider a significant mitigating circumstances constitutes an abuse of discretion." Id. at 1581.

The self-serving and contradictory nature of Mr. Hipolit's declaration is also apparent because he did not even know what, if any, Douglas factors he considered.  On one hand, he claimed that he considered petitioner's past work record and performance. Then he stated that such factors were not relevant to a performance based action.

The declaration of Ms. Oddo similarly distorted reality.  Contrary to her assertion, the record indicates that she too did not consider the Douglas factors. Her declaration statement that "These considerations are thoroughly explained in the proposal, and in my testimony during the hearing" is a complete fabrication.  There was nothing in the proposal letter or her testimony which indicated that she considered the Douglas factors that she subsequently self-servingly claimed she did.  The inherent contradiction in her declaration is also apparent when, on one hand, she claimed that she considered petitioner's past

work record and performance and, on the other hand, stated that such factors were not relevant to this case.  In fact, on her direct testimony, she was never even asked about the factors that she considered. On cross-examination, she too conceded that she did not even consider petitioner's disability to be a mitigating factor.

With this background in mind, it is inconceivable that the Board, in the Remand Order, rejected the administrative judge's finding that the deciding official's declaration that he considered the <u>Douglas</u> factors was "unworthy of belief."  It was the administrative judge's discretion to weigh the credibility of Mr. Hipolit and Ms. Oddo without being second-guessed by the Board in the Remand Order. Instead of giving the administrative judge's credibility determination the weight it deserved, the Remand Order opined:

> Looking at the deciding official's declaration, we do not find it obvious on its face that the statements made therein contradict his prior testimony. In his testimony, he stated that he did not consider the *Douglas* factors because the agency believed they were not applicable to the current adverse action procedure; however, in his declaration, he stated that consideration of the factors is "generally reflected in [his] written decision" and in his hearing testimony.  (Exhibit A, p. 12)

The Board's holding, in crediting Mr. Hipolit's self-serving after acquired declaration, obtained without the benefit of cross-examination, is insufficient.

The Board is attempting to blur the distinction between the idea that the agency is permitted to only consider some <u>Douglas</u> factors and exclude other factors as opposed to the concept of excluding **all** of the factors, which means it did not apply them at all. In fact, Mr. Hipolit's declaration and Ms. Oddo's declaration assert that they utilized some of the factors. They do not explain why they chose some and not others.

The Board, in the Remand Order, continued:

> Thus, although the deciding official may not have completed a *Douglas* factor worksheet or some formal analysis similar thereto, he asserts that he nonetheless considered the substance of the factors, and we believe the record supports that assertion. HCD (testimony of the deciding official). (Exhibit A, p. 12)

The Board acted improperly by rejecting the need for a worksheet or other formal analysis. How does the record support Mr. Hipolit's assertion that he considered the "substance of the factors," when the Remand Order cannot and does not explain where in the record such support exists? The Remand Order could not do so because Mr. Hipolit never provided "specific reasons" for his chosen penalty. The Board's entire reasoning on the issue was an abuse of discretion, contrary to this court's <u>Brenner</u> decision, and evidence of it overstepping its bounds.

The Board's Remand Order concerning the <u>Douglas</u> factors goes to the heart of this case and, again, presents issues which are a gross abuse of discretion, an overstepping of its bounds, and which will prejudice petitioner's ability to appeal a final Board decision. The issuance of a writ is appropriate with respect to this issue as well as it will affect many pending Board decisions.

**4.      There Is No Need for Another Hearing**

In its Remand Order, the Board also overstepped its bounds by directing

the administrative judge to hold a "supplemental hearing." (Exhibit A, p. 13) We

will remember that, in its decision, this court was very clear that the matter

should be considered on "the evidence of record." Indeed, the court held:

> We vacate [Mr. Brenner's] removal and remand to the
> [MSPB] for further proceedings to consider whether the
> 'VA's removal decision' under 38 U.S.C. § 714 –
> including penalty' – is supported by substantial
> evidence <u>on the evidence of record </u>that post-dates the
> Act." <u>Brenner v. DVA</u> at 1330. (Emphasis added)

The Board, by its Remand Order, has given the agency a third attempt to

rectify the infirmities that were present on the original record and in the

supplemental declarations. In doing so, the Board proceeded in excess of its

authority, overstepped its bounds, and essentially ignored the dictates of this

court that the matter be considered "on the evidence of record." That should not

be permitted and only the issuance of the requested writ can cure this situation.

**V.      CONCLUSION**

The Board, by issuing the Remand Order, has effectively nullified this

court's decision in <u>Brenner</u> and other cases. This court must intervene so that the

issues addressed herein are resolved and so that petitioner is not compelled to

participate in a totally flawed Board proceeding. To require petitioner to await a final Board order will not remedy the gross violations discussed herein. This court must issue the requested writ directed to the Board and compel the vacatur of the Board's Remand Order dated April 2, 2024 and, upon the vacatur of the Remand Order, remand the case to the Board for a new remand decision in accordance with this court's precedents and established authority. Petitioner also seeks a stay of all proceedings in the Board, including the currently scheduled hearing, pending a determination of the issues herein.

Dated: Jericho, New York
      June 21, 2024

                             Respectfully submitted,
                             WOLIN & WOLIN

                             /s/ Alan E. Wolin
                             By: Alan E. Wolin, Esq.
                             *Attorney for Petitioner*
                             33 South Service Road, #189
                             Jericho, New York 11753
                             (516) 938-1199
                             (516) 938-1178 (fax)
                             Email: wolinlaw@aol.com

## CERTIFICATE OF INTEREST

Petitioner, Lawrence Brenner, by and through his undersigned attorney, states his Certificate of Interest as follows:

1.      The full name of the party represented by the attorney in the case.

   Response:   Lawrence Brenner

2.      The name of the real party in interest.

   Response:   Lawrence Brenner.

3.      The corporate disclosure statement prescribed in Rule 26.1.

   Response:   The Petitioner is not a corporate entity interest.

4.      The names of the law firms and the partners or associates that appeared for the

party now represented by me in the trial or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   Response:   None

5.      The title and number of any case known to counsel to be pending in this or any

other court or agency that will directly affect or be directly affected by this court's

decision in the pending appeal.

   Response:   None.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 27(d) of the Federal Rules of Appellate Procedure, I hereby certify that this motion complies with the Court's type-volume limitation rules. This motion was printed in Time New Roman font at 14 points and, according to the word-count calculated by WordPerfect, contains a total of 7,011 words, which is within the 7,800 word limit.

/s/ Alan E. Wolin
ALAN E. WOLIN

Exhibit A

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LAWRENCE BRENNER,

            Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,

            Agency.

DOCKET NUMBER
NY-0714-19-0007-M-1

DATE: April 2, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Alan E. Wolin, Esquire, Jericho, New York, for the appellant.

Aaron L. Robison, Esquire, Sacramento, California, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

### REMAND ORDER

    The agency has filed a petition for review, and the appellant has filed a cross petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we GRANT the agency's petition for review, VACATE the initial decision, DENY the appellant's cross petition for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review, and REMAND the case to the New York Field Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was employed as an Attorney-Advisor with the Department of Veterans Affairs' (DVA) Office of General Counsel. *Brenner v. Department of Veterans Affairs*, MSPB Docket No. NY-0714-19-0007-I-1, Initial Appeal File (IAF), Tab 10 at 23. On September 28, 2018, the agency removed him based on three charges of unacceptable performance in the critical elements of his position: (1) unacceptable performance in the critical element of timeliness for the rating period of October 1, 2016, to September 30, 2017; (2) unacceptable performance in the critical element of professional responsibility and accountability for the rating period of October 1, 2016, to September 30, 2017; and (3) unacceptable performance in the critical element of timeliness for the rating period that began October 1, 2017.[2]  *Id.* at 23-28. The decision notice indicated that the removal action was being taken under the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (VA Accountability Act), Pub. L. No. 115-41, § 202(a), 131 Stat. 862, 869-73 (codified as amended at 38 U.S.C. § 714). *Id.* at 24.

Thereafter, the appellant filed an appeal with the Board challenging the removal and raising, among other things, the affirmative defenses of discrimination based on disability and age, reprisal for filing a prohibited personnel practice complaint and whistleblower reprisal complaint with the Office of Special Counsel, and harmful procedural error. IAF, Tab 1. After holding the appellant's requested hearing, *id.* at 2, the administrative judge issued an initial decision affirming the removal action, IAF, Tab 41. In doing so, she concluded that the agency proved all its charges by substantial evidence, as required by 38 U.S.C. § 714(d)(2)(A). *Id.* at 6-26. Stating that the Board lacks

---

[2] Charge 3 covered the period from October 1, 2017, until the agency proposed the appellant's removal on March 26, 2018. IAF, Tab 10 at 26, 240.

the authority to mitigate the agency's penalty selection, *id.* at 7 (citing 38 U.S.C. § 714(d)(2)-(3)), the administrative judge did not consider the reasonableness of the penalty of removal, but, based on her finding that the agency proved all its charges, she affirmed the removal action, *id.* at 26. Additionally, she found that the appellant failed to prove any of his affirmative defenses. *Id.* at 26-48.

After that initial decision became final, the appellant appealed the decision to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). Before the Federal Circuit, he argued that (1) the Board erred in concluding that it was prohibited from reviewing the reasonableness of the penalty; and (2) the DVA and the Board improperly applied the VA Accountability Act, which became effective on June 23, 2017, to actions that occurred prior to that date, dating back to October 1, 2016. *See Brenner v. Department of Veterans Affairs*, 990 F.3d 1313, 1322 (Fed. Cir. 2021). On March 9, 2021, the Federal Circuit issued an opinion, vacating the initial decision and remanding the appeal to the administrative judge. *Id.* at 1330. Regarding the first issue, the court referenced its prior decision in *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370 (Fed. Cir. 2020), wherein it found that review of the penalty must be included in the Board's review of an agency action under section 714. *Brenner*, 990 F.3d at 1323-27 (citing *Sayers*, 954 F.3d at 1375-79). Accordingly, in the instant matter, the court found that the administrative judge erred when she concluded that the Board lacked authority to review the agency's penalty selection. *Id.* Regarding the second issue, the court found that the administrative judge erred in applying the VA Accountability Act retroactively to conduct that occurred prior to the statute's effective date, and, therefore, further found that her affirmance of the removal action was not in accordance with the law. *Id.* at 1327-28, 1330. As a result, the court remanded the matter to the Board with instructions to consider whether the removal action, including the penalty, is supported by substantial

evidence based on the evidence that postdates the VA Accountability Act.[3] *Id.* at 1330.

Following the remand, but prior to the issuance of the remand initial decision, the Federal Circuit decided *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290 (Fed. Cir. 2021), wherein it found that the DVA erred when it applied the substantial evidence burden of proof to its internal review of a disciplinary action under 38 U.S.C. § 714. *Id.* at 1296-1301. The same day it decided *Rodriguez*, the Federal Circuit also decided *Connor v. Department of Veterans Affairs*, 8 F.4th 1319 (Fed. Cir. 2021), wherein it found that the DVA and the Board must still apply the *Douglas*[4] factors to the selection and review of penalties in DVA disciplinary actions taken under 38 U.S.C. § 714. *Id.* at 1326-27. Recognizing that these cases affected the adjudication of the appellant's removal appeal, the administrative judge issued an order informing the parties of the Federal Circuit's decisions in *Rodriguez* and *Connor* and reframing the issues on remand to comport with the court's *Brenner* remand opinion, *Rodriguez*, and *Connor*. *Brenner v. Department of Veterans Affairs*, MSPB Docket No. NY-0714-19-0007-M-1, Remand Appeal File (RAF), Tab 16. In doing so, the administrative judge framed the issues to be decided on remand as follows: (1) whether the agency proved by preponderant evidence its three charges based on the evidence of record that postdates the VA Accountability Act; (2) whether the agency considered the *Douglas* factors in determining the appropriate penalty; and (3) whether the penalty of removal is supported by preponderant evidence, in accordance with *Sayers*.[5] *Id.* at 4.

---

[3] The Federal Circuit also explained that, if the agency wished to rely on evidence of record that predated the VA Accountability Act, it must proceed with an action under chapters 75 or 43. *Brenner*, 990 F.3d at 1330.

[4] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse actions.

[5] The administrative judge also considered as an issue on remand whether the agency proved charges one and three by preponderant evidence, in light of the deciding

With its close of record submission, the agency submitted declarations made under penalty of perjury from the proposing and deciding officials. RAF, Tab 20 at 22-27, 29-34.  In the deciding official's declaration, he stated that the appellant's performance after the effective date of the VA Accountability Act still "satisfied the charges of unacceptable performance in the critical element of timeliness and warranted removal."  *Id.* at 23.  He further stated that the "evidence file" supports the unsuccessful performance that occurred after June 23, 2017, as cited in all three charges "by a preponderance of the evidence." *Id.* at 25.  Finally, he stated that, while he did not complete a "formulaic *Douglas* factor analysis on paper" in this matter, he did consider the relevant *Douglas* factors at the time he made his decision.  *Id.* at 26.  In the proposing official's declaration, she also asserted that the evidence file supports the charges of unsuccessful performance on conduct that occurred after June 23, 2017, by a preponderance of the evidence and that she considered the relevant *Douglas* factors at the time she proposed the appellant's removal.  *Id.* at 32-34.

Without taking additional testimony, RAF, Tab 14 at 1, the administrative judge issued an initial decision on the written remand record, RAF, Tab 23, Remand Initial Decision (RID).  In discussing the Federal Circuit's decision in *Rodriguez*, she reasoned that, although the Board's standard of review is "substantial evidence," the DVA was required to prove its charges and chosen penalty by "preponderant evidence."  RID at 9-13.  In applying this standard of proof to the charges, the administrative judge considered the proposing and deciding officials' declarations asserting that the evidentiary record on the appellant's performance issues postdating June 23, 2017, supported the charges of unacceptable performance by a preponderance of the evidence, but she found that

official's admission that the proposing official applied an incorrect standard regarding the timeliness of the appellant's work when discussing his performance under the critical element concerning timeliness. RAF, Tab 16 at 4.  Because this is related to the issue of whether the agency proved the charges by preponderant evidence, we do not address this issue separately.

this "post-hoc justification" did not overcome the actual language used in the proposing and decision letters or testimony at the hearing that the charges were supported by substantial evidence. RID at 7-8. Thus, she found that the agency failed to prove the charges by preponderant evidence. RID at 6-8.

Assuming, alternatively, that the agency had met its burden with respect to the charges, the administrative judge then discussed whether it met its burden regarding the reasonableness of the penalty of removal. RID at 9. In her analysis, the administrative judge reiterated that *Connor* requires the DVA to consider the *Douglas* factors. RID at 9. Although she considered the deciding official's declaration asserting that he did consider these factors, the administrative judge found the declaration "unworthy of belief" in light of his prior testimony that he did not consider the *Douglas* factors because they "are not applicable under our current procedure." *Id.*; Hearing Compact Disc (HCD) (testimony of the deciding official). Accordingly, she found that the agency failed to prove that the penalty of removal was supported by preponderant evidence. RID at 9. Based on the foregoing, the administrative judge found that the removal was not in accordance with the law, and she reversed the removal action. RID at 1, 4-5, 13-14. Although the administrative judge determined that the appellant was the prevailing party, she did not order interim relief. RID at 15 (citing 38 U.S.C. § 714(d)(7)).

The agency has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. Therein, it argues that neither of the administrative judge's conclusions that the agency failed to prove its charges by preponderant evidence or to consider the *Douglas* factors renders the removal decision "not in accordance with the law" and that the administrative judge should have applied the "harmful error" analysis. *Id.* at 7, 12-15. It also argues that the administrative judge erred in finding that the deciding official did not consider the relevant *Douglas* factors and in failing to provide the deciding official with an opportunity to determine whether the evidence supported the

charges by preponderant evidence. *Id*. at 15-17. Finally, the agency argues that the administrative judge erred in requiring it to prove before the Board its charges and the reasonableness of the penalty by preponderant evidence, rather than by substantial evidence. *Id*. at 17-18. The appellant has filed a response to the agency's petition for review and has filed a cross petition for review.[6] PFR File, Tab 3. In his cross petition for review, the appellant argues that the administrative judge erred in not ordering interim relief, pursuant to 5 U.S.C. § 7701(b)(2)(A). *Id*. at 29. The agency has replied to the appellant's response to its petition for review, and it has responded in opposition to his cross petition for review.[7] PFR File, Tabs 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant's cross petition for review is denied.

As stated above, the appellant has filed a cross petition for review, arguing that the administrative judge erred in not ordering interim relief despite the fact that she determined that the appellant was the prevailing party in this matter. PFR File, Tab 3 at 29; RID at 15. We discern no error in the administrative judge's decision not to order interim relief. Title 38, United States Code, Section 714(d)(7) provides that, in a removal action taken under § 714, an appellant who files a Board appeal "may not receive any pay, awards, bonuses, incentives, allowances, differentials, student loan repayments, special payments, or benefits

---

[6] The appellant has not challenged the administrative judge's original findings that he failed to establish any of his affirmative defenses. PFR File, Tab 3. We discern no basis to disturb those findings here.

[7] The appellant has also filed a motion for leave to file a reply to the agency's response to his cross petition for review. PFR File, Tab 8. The Office of the Clerk of the Board acknowledged the appellant's motion but explained that the Board's regulations do not provide for pleadings other than a petition for review, a cross petition for review, a response to the petition for review or cross petition for review, and a reply to a response to a petition for review. PFR File, Tab 9 (citing 5 C.F.R. § 1201.114(a)(5)). It informed the appellant that the Board would decide to grant or deny his request. *Id*. at 1. We have reviewed the appellant's motion for leave to file a reply to the agency's response but are not persuaded by his argument regarding the need for the additional submission. 5 C.F.R. § 1201.114(a)(5). Accordingly, the appellant's motion is denied.

related to the employment of the individual by the Department [of Veterans Affairs]" after his or her removal by the agency until "the United States Court of Appeals for the Federal Circuit issues a final decision on such appeal." The Board has construed this language to preclude an award of interim relief in an appeal brought pursuant to 38 U.S.C. § 714. *See Schmitt v. Department of Veterans Affairs*, 2022 MSPB 40, ¶¶ 11-16. Although the appellant argues that 38 U.S.C. § 714(d)(7) "is not applicable to this situation" and asserts that the interim relief provisions set forth in 5 U.S.C. § 7701(b)(2) should govern, PFR File, Tab 3 at 29, the Board has found that, despite the conflicting nature of those two provisions, 38 U.S.C. § 714(d)(7) controls and precludes an award of interim relief, *see Schmitt*, 2022 MSPB 40, ¶¶ 11-16. Accordingly, the appellant's cross petition for review is denied.

<u>The agency's application of the substantial evidence standard of proof to its internal deliberation of the charges is subject to the harmful error standard.</u>

In the agency's decision notice removing the appellant, the deciding official concluded that the agency's charges were supported by substantial evidence. IAF, Tab 10 at 24-26. As explained above, the administrative judge informed the parties of the Federal Circuit's decision in *Rodriguez*, which found that the preponderant evidence is the proper standard for the DVA to apply in determining whether an employee has engaged in misconduct that justifies discipline.[8] RAF, Tab 16; *see Rodriguez*, 8 F.4th 1297-1301. Although the deciding official submitted a declaration stating that the "unsuccessful performance that occurred after June 23, 2017" is supported by a preponderance of the evidence, RAF, Tab 20 at 23, the administrative judge gave greater weight to the "statutorily required decision letter," which relied on "substantial

---

[8] We address later in this Remand Order the administrative judge's apparent confusion in requiring the agency to also prove before the Board its charges by preponderant evidence. Our discussion here is limited to the burden of proof applied by the agency during its internal disciplinary proceedings, which the administrative judge appropriately determined to be in error.

evidence,"[9] CID at 6-8.  She, therefore, found that the agency's application of the incorrect standard of proof rendered the removal action "not in accordance with the law."  RID at 6-8, 13-14.

In the agency's petition for review, it argues that a failure to apply the correct standard of proof does not render a decision "not in accordance with law" and that the administrative judge should have analyzed the error under a harmful procedural error framework.  PFR File, Tab 1 at 7, 12-13.  We agree.  In *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, the Board held that, because the Board adjudicates an action taken under the VA Accountability Act under 5 U.S.C. § 7701(b)(1), *see* 38 U.S.C. § 714(c)(4)(A), (d)(1), actions taken under 38 U.S.C. § 714 are subject to the harmful error test from 5 U.S.C. § 7701(c)(2), *Semenov*, 2023 MSPB 16, ¶ 23.  As such, the proper inquiry here is whether the agency's error in applying the incorrect standard of proof was likely to have caused the agency to reach a different conclusion from the one it would have reached in the absence or cure of the error.  *See id.* (citing *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 14 (2015); 5 C.F.R. § 1201.4(r)).  Accordingly, we vacate the initial decision and remand this appeal for the administrative judge to consider whether the agency committed harmful error.

The agency must prove its charges by substantial evidence before the Board.

If, upon remand, the administrative judge determines that the agency's error in applying the incorrect standard of proof to its internal proceedings was not harmful, the subsequent analysis is whether the agency met its burden of

[9] We find nothing inconsistent between the deciding official's statement in the decision notice that the charges are supported by substantial evidence and his later statement in a declaration that the charges are supported by preponderant evidence.  IAF, Tab 10 at 24; RAF, Tab 20 at 23-25.  A determination that the charges are supported by preponderant evidence necessarily includes an implicit acknowledgment that the charges are also supported by substantial evidence.  *See* 5 C.F.R. § 1201.4(p), (q) (explaining that substantial evidence is a "lower standard of proof than preponderance of the evidence").  Thus, we discern no reason to disregard the deciding official's subsequent statement that the charges are supported by preponderant evidence based solely on the fact that he made a prior determination under a lower standard of proof.

proof with respect to the charges before the Board.  As noted above, in the remand initial decision, the administrative judge interpreted *Rodriguez* to suggest that, while "the Board's standard of review is 'substantial evidence,' . . . the [D]VA was required to prove its charges [] by 'preponderant evidence.'"  RID at 13.  Because, as previously explained, the administrative judge did not give weight to the deciding official's declaration explaining that he determined the charges to be supported by preponderant evidence, she found that the agency failed to meet its burden of proof before the Board.  RID at 6-8.

Although not directly argued by the agency on review, we find the administrative judge's interpretation of *Rodriguez* to be in error.  In that case, the Federal Circuit clarified that "the DVA is not required to prove its case before the Board by a preponderance of the evidence, as is the case for employee disciplinary actions brought under chapter 75 of Title 5" and that "on any appeal to the Merit Systems Protection Board, the administrative judge and the Board will review the [] action under the 'substantial evidence' standard."  8 F.4th at 1297.  Thus, the agency was required to prove its charges <u>before the Board</u> by "substantial evidence."

We acknowledge that, in the original initial decision in this matter, the administrative judge found that the agency proved its charges by "substantial evidence."[10]  IAF, Tab 41 at 8-26.  On review before the Federal Circuit, however, the court concluded that the agency erroneously included in its charges against the appellant performance-related matters that predated the effective date of the VA Accountability Act.  *Brenner*, 990 F.3d 1327-30.  Therefore, on remand, if the administrative judge determines that the agency's error in applying the incorrect standard of proof to its internal review of the removal action was not harmful, then she must consider whether the agency proved by substantial evidence its three charges of unacceptable performance based only on evidence of

---

[10] Notably, in the *Brenner* opinion, the Federal Circuit did not disturb the administrative judge's application of the "substantial evidence" standard of proof.  990 F.3d at 1321.

record that postdates the June 23, 2017 effective date of the VA Accountability Act. In analyzing an unacceptable performance charge brought under 38 U.S.C. § 714, the administrative judge should consider whether the agency's performance standards are reasonable and provide for an accurate measurement of the appellant's performance, and whether the appellant's performance was unacceptable according to that measurement. *Semenov*, 2023 MSPB 16, ¶ 19.

<u>If applicable, the administrative judge should consider whether the agency proved that the penalty of removal is supported by substantial evidence.</u>

When determining whether the agency's decision to remove the appellant under the VA Accountability Act is supported by substantial evidence, the Board must also consider the agency's penalty choice as part of that review. *Sayers*, 954 F.3d at 1376; *see Brenner*, 990 F.3d at 1323-24. As previously explained, in *Connor*, the Federal Circuit held that the DVA and the Board "must continue to apply the relevant *Douglas* factors in considering the reasonableness of the penalty in [D]VA disciplinary action cases." 8 F.4th at 1326. Accordingly, the administrative judge considered the penalty in the remand initial decision. RID at 9. As stated above, she found that the deciding official's declaration claiming that he considered the *Douglas* factors was "unworthy of belief" in light of the fact that he had previously testified that he did not consider the *Douglas* factors because they were not applicable under the "current procedure." *Id.*; HCD (testimony of the deciding official). Thus, she concluded that the agency failed to prove that the penalty of removal was supported by preponderant evidence, thereby rendering the removal action "not in accordance with the law." RID at 9, 13-14.

On review, the agency argues that, although the deciding official did not formally call it a *Douglas* factor analysis, he nonetheless considered the factors relevant to a proper penalty determination and concluded that the penalty of removal is "appropriate and warranted," as indicated in his declaration. PFR File, Tab 1 at 16-17; RAF, Tab 20 at 25-27. It further argues that, even if the agency

failed to prove that it considered the *Douglas* factors, the proper result is a lack of deference to the deciding official—not a determination that the action was "not in accordance with law." PFR File, Tab 1 at 14-16.

Looking at the deciding official's declaration, we do not find it obvious on its face that the statements made therein contradict his prior testimony. In his testimony, he stated that he did not consider the *Douglas* factors because the agency believed they were not applicable to the current adverse action procedure; however, in his declaration, he stated that consideration of the factors is "generally reflected in [his] written decision" and in his hearing testimony. RAF, Tab 20 at 26. For example, during the hearing, he testified that he considered, among other things: (1) the appellant's job and grade level; (2) whether a lesser penalty would have been more appropriate than removal; (3) whether the appellant lost the trust and confidence of his supervisor that he would perform satisfactorily; (4) whether the appellant showed potential for rehabilitation; and (5) any mitigating factors such as the appellant's workload. HCD (testimony of the deciding official). In the decision notice, the deciding official stated that the deficiencies related to the timeliness critical element were "egregious" and "significant in terms of the Office of General Counsel's ability to provide timely advice to its clients in support of the Department's mission of service to Veterans." IAF, Tab 10 at 26. He also stated that the appellant's deficiencies "undermine [his] supervisor's ability to effectively manage the office and undermine [her] trust that [he] will bring mistakes to her attention." *Id.* Although the deciding official recognized that the appellant had "provided many years of satisfactory service to the agency," he nonetheless determined that "removal is appropriate and the only suitable option." *Id.* at 27. Thus, although the deciding official may not have completed a *Douglas* factor worksheet or some formal analysis similar thereto, he asserts that he nonetheless considered the substance of the factors, and we believe the record supports that assertion. HCD (testimony of the deciding official); RAF, Tab 20 at 26-27.

Moreover, contrary to the administrative judge's assertion in the remand initial decision that the agency's choice of penalty must be supported by preponderant evidence, RID at 9-13, we reiterate that the agency must prove that the penalty is supported by "substantial evidence," *see Sayers*, 954 F.3d at 1376; *Brenner*, 990 F.3d at 1323.    Accordingly, on remand, if applicable, the administrative judge should consider whether the penalty of removal is supported by substantial evidence based on the sustained conduct that postdates the VA Accountability Act.

## ORDER

For the reasons discussed above, we remand this case to New York Field Office for further adjudication in accordance with this Remand Order.    As outlined above, the administrative judge shall first address whether the agency's error in applying the substantial evidence standard of proof to its original action was harmful.  *See* 5 U.S.C. § 7701(a)(1), (b)(1); *Semenov*, 2023 MSPB 16, ¶ 24. If the administrative judge determines that the agency's error was not harmful, she should then consider whether the agency proved its charges by substantial evidence based only on evidence that postdates the June 23, 2018 effective date of the VA Accountability Act, and, if so, whether the penalty of removal is supported by substantial evidence and in accordance with *Connor*.

In conducting this adjudication, the administrative judge shall hold a supplemental hearing but may limit the subject matter to issues deemed relevant on remand.  She shall then issue a remand initial decision discussing these issues. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the

administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).[11]

FOR THE BOARD:        _____
                      *Gina K. Grippando*
                      Gina K. Grippando
                      Clerk of the Board

Washington, D.C.

---

[11] To the extent any of the evidence or argument taken on remand affects the administrative judge's prior discussion of the appellant's affirmative defenses, her remand initial decision should reflect that analysis.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

### Appellant

U.S. Mail

Lawrence Brenner
9902 Third Avenue
Brooklyn, New York 11209

### Appellant Representative

Electronic Service

Alan Wolin
Served on email address registered with MSPB

### Agency Representative

Electronic Service

Aaron Robison
Served on email address registered with MSPB

| 04/02/2024 | *Tawanda Williams* |
|------------|--------------------|
| (Date) | Tawanda Williams |
| | Paralegal Specialist |

Exhibit B

# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD
# NEW YORK FIELD OFFICE

| | |
|---|---|
| LAWRENCE BRENNER,<br>　　　　　　　Appellant, | DOCKET NUMBER<br>NY-0714-19-0007-I-1 |
| v. | |
| DEPARTMENT OF VETERANS<br>　　AFFAIRS,<br>　　　　　　　Agency. | DATE: March 18, 2019 |

Alan E. Wolin, Esquire, Jericho, New York, for the appellant.

Aaron L. Robison, Esquire, Sacramento, California, for the agency.

## BEFORE
Maria M. Dominguez
Administrative Judge

## INITIAL DECISION

## INTRODUCTION

On October 5, 2018, the appellant filed a timely appeal[1] with the Merit Systems Protection Board (the Board) challenging the Department of Veterans Affairs' (VA's or agency's) decision to remove him under the authority of 38 U.S.C. § 714, for unacceptable performance, from his position of Attorney-Advisor, GS-0904-14, with the agency's Collections National Practice Group

---

[1] Shortly before filing the instant matter, the appellant filed an individual right of action appeal (IRA) on August 28, 2018 pertaining to the proposal to remove him, among other things. *See Brenner v. Department of Veterans Affairs*, MSPB Dkt. No. NY-1221-18-0195-W-1, IRA File (IRAF), Tab 1.

(CNPG), in Brooklyn, New York, effective September 28, 2018.  Initial Appeal File (IAF), Tab 1.  The hearing[2] that the appellant requested was held on December 12 and 13, 2018, in the Board's New York Field Office.  *See* Hearing Transcripts 1 and 2 (HT1 and HT2)[3].  For the reasons explained below, the agency's removal action is AFFIRMED.

## ANALYSIS & FINDINGS

Applicable law

The appellant was removed under the provisions of the Department of Veterans Affairs Accountability and Whistleblower Protection Act (DVAAWPA), 38 U.S.C. § 714, et seq., which authorizes the Secretary to remove, demote or suspend a covered VA employee upon the Secretary's determination that the employee's "performance or misconduct . . . warrants such removal, demotion, or suspension."  38 U.S.C. § 714(a)(1).  It also provides, "Notwithstanding section 7701(c)(1)(B) of title 5, the administrative judge shall uphold the decision of the Secretary to remove, demote, or suspend an employee under subsection (a) if the decision is supported by substantial evidence."  38 U.S.C. § 714(d)(2)(A).  An individual covered under the DVAAWPA may appeal such actions to the Merit Systems Protection Board (Board).  *See* 38 U.S.C. § 714(c)(4)(A).

Background

The appellant began working for the VA as an Attorney-Advisor with the Office of General Counsel (OGC) in Brooklyn, New York in March 1992.  HT2 at 5-6 and 12, appellant's testimony.  In April 2015, he was in an accident which resulted in the amputation of his lower, right leg, below the knee.  HT2 at 7-8.

---

[2] The appellant's IRA appeal was joined with this matter for purposes of a hearing only, but an initial decision pertaining to the IRA appeal has not yet been issued.

[3] HT1 refers to the first day of hearing (December 12, 2018).  HT2 refers to the second day of hearing (December 13, 2018).

Upon returning to work following his accident, the appellant was re-assigned[4] to the CNPG on October 1, 2015, which was located in the same building as his former job, although he had to report to a new supervisory chain[5].  HT2 at 12-13.

The CNPG provides legal advice and representation in recoupment of funds matters, including in bankruptcy and probate, general debt recoupment related to government property damage, escheatment, accidental injury to veterans, and workers' compensation recovery.  HT1 at 75, testimony of Richard J. Hipolit, Deputy General Counsel for Veterans Programs (DGC Hipolit); HT1 at 119, testimony of Chief Counsel Kathleen Oddo (CC Oddo).  CNPG attorneys also provide litigation support to the Department of Justice when any recoupment matters are challenged in federal court.  HT2 at 11-12, appellant's testimony.

The CNPG consists of a small number of attorneys at the GS-13 and GS-14 levels.  HT1 at 186-87, testimony of Ann Marie Duncan, Deputy Chief Counsel (DCC Duncan).  As a GS-14 Attorney-Advisor with the CNPG, the appellant's duties included providing legal review and advice on the types of matters mentioned above and was entrusted with a high level of responsibility and independence since he was expected to perform his duties under limited supervision and to exercise good, independent judgment.  HT2 at 14-16, appellant's testimony; HT1 at 38-39, DGC Hipolit's testimony.

The appellant's performance as an Attorney-Advisor was measured by 6 elements: (1) Stakeholder Service; (2) Timeliness; (3) Professional Responsibility and Accountability; (4) Case Development and Management; (5) Quality of Communications and Writing; and (6) Cooperation and Organizational Support.

---

[4] In 2015, a general re-organization to improve the agency's efficiency was conducted, which was the cause of the appellant's re-assignment.  HT1 at 61-63, testimony of Richard J. Hipolit, Deputy General Counsel for Veterans Programs.

[5] He remained in this position with the CNPG until his removal on September 28, 2018. HT2 at 6-10.

IAF, Tab 11 at 454-471[6], Fiscal Year 2017 (FY17) Performance Evaluation. Elements (1) Stakeholder Service, (2) Timeliness, and (3) Professional Responsibility and Accountability, are critical elements, whereas the remaining 3 elements are considered non-critical.  *Id.* at 457.

The type of performance required to achieve a "fully successful" rating in each of these elements was clearly articulated in the performance plan.  *See id.* at 465-71.  Said plan also clearly described the level of performance that would result in "less than fully successful" and "exceptional" ratings for each of the elements.  *See id.*  Finally, by signature dated December 22, 2016, the appellant acknowledged that the standards were communicated to him that day.  *Id.* at 454.

On May 24, 2017, DCC Duncan, the appellant's first-line supervisor, issued him a mid-term progress review, rating him "fully successful."  *See id.* at 456.  He also received a "fully successful" rating for fiscal year 2016.  *See id.*, Tab 31; HT2 at 27-28, appellant's testimony.

Shortly thereafter, on July 5, 2017, the appellant was issued a reprimand for failing to complete an assignment in a timely fashion.  HT1 at 23-24, DGC Hipolit's testimony; HT1 at 124-25, CC Oddo's testimony.  The reprimand at issue indicated as follows:

> On April 27, 2017, you were directed by me to research workers' compensation law and cases for the State of New Jersey and to draft a proposed letter to the chief judge that oversees the judges that handle state workers' compensation cases.  There is an ongoing issue, as identified by you, with one judge overseeing workers' compensation cases and the judge would not allow you or any other VA attorney to appear for the sole purpose of presenting VA's claim unless the VA attorney was licensed in the State of New Jersey.  You were also directed to research if other federal agencies, such as the U.S. Postal Service, Department of Defense, and the U.S. Coast

---

[6] References to page numbers herein are made to the numbers that were affixed onto the pages when they were electronically filed, rather than to any other page numbers found on the documents.  The electronically-affixed page numbers are located on the bottom, right-hand side, of the documents referenced.

Guard, were experiencing similar issues.  On May 16, 2017, you were asked about the status of the letter.  On May 16, 2017, you requested, via email, additional time to complete the assignment.  You asked: "Can I get it to you by Thursday [May 18, 2017]?"  In response to your request, I extended the deadline to Monday, May 22, 2017, to complete the draft and forward to me.  You did not complete this critical assignment as directed.  I cannot and will not tolerate this form of misconduct.  Therefore, you are charged with failure to complete assigned work tasks.

IAF, Tab 1, Rider to OSC complaint, Exhibit A.

On December 7, 2017, the appellant received an overall "unacceptable" rating for FY17, wherein he was found to be "unacceptable" in critical elements (2) Timeliness, and (3) Professional Responsibility and Accountability.  *See id.*, Tab 10 at 129-35.  As for critical element (1) Stakeholder Service, and non-critical elements (4), (5), and (6), he was rated "fully acceptable."  *Id.*  CC Oddo, the appellant's second-line supervisor at that time[7], concurred with the FY17 rating.  *See id.* at 130.

Adverse action

By letter dated March 26, 2018, CC Oddo proposed the appellant's removal for unacceptable performance under the authority of 38 U.S.C. § 714 (proposal letter).  Specifically, she charged him with unacceptable performance in: critical element 2, Timeliness, for the rating period covering October 1, 2016 through September 30, 2017 (charge 1); critical element 3, Professional Responsibility and Accountability, for the rating period covering October 1, 2016 through September 30, 2017 (charge 2); and critical element 2, Timeliness, for the rating period that began on October 1, 2017 (charge 3).  *See* IAF, Tab 10 at 240-251.

The proposal letter notified him of his right to reply and indicated that in the event he filed an Office of Special Counsel (OSC) and/or Office of

---

[7] The appellant testified that between mid-March 2018 and September 1, 2018, CC Oddo served as his first-line supervisor because DCC Duncan had been out of the office.  HT2 at 13.

Accountability and Whistleblower Protection (OAWP) complaint, a decision as to the proposed action would not be rendered until such time as the OSC and/or the OAWP allowed such action to proceed.  *See* IAF, Tab 10 at 250-51.

On April 6, 2018, the appellant, through his attorney, provided a written reply to deciding official DGC Hipolit, to which he attached copies of his OSC and OAWP complaints, including all the attachments he had submitted to those agencies in support of his claims.  *See id.* at 34-239.  Among the arguments raised in response to the proposed removal was his claim that in anticipation of said action, DCC Duncan and CC Oddo had taken steps "to make [his] work situation onerous and to ensure his failure."  *Id.* at 36.  He also raised the fact he had previously engaged in protected Equal Employment Opportunity (EEO) and whistleblowing activity.  *See id.* at 35 and 38.

By letter dated April 9, 2018, DGC Hipolit informed the appellant that his decision on the proposal would be held in abeyance until such time that the OSC and OAWP notified him that he may proceed.  *See id.* at 32.  Thereafter, on September 21, 2018, an OAWP representative notified the agency that the OSC and OAWP matters had been resolved and, that the proposal was clear to proceed.  *See id.* at 29.  Following his review of the evidence in support of the proposed action, by letter dated September 28, 2018, DGC Hipolit found that there was substantial evidence to support each of the charges, at which time the removal was sustained.  *See id.* at 24-28.  This appeal followed.  *Id.*, Tab 1.  The appellant raised affirmative defenses, which will be discussed below.  *Id.*, Tab 27.

Legal standards under 38 U.S.C. § 714[8]

As indicated above, to sustain an adverse action under 38 U.S.C. § 714, the VA must prove its charges by substantial evidence.  38 U.S.C. § 714(d)(2)(A).

---

[8] Although the decision letter was issued well beyond the 15 business days permitted by 38 U.S.C. § 714(c), such timeframe was properly stayed after the appellant made whistleblowing disclosures to the OSC and OAWP.  *See* 38 U.S.C. § 714(e).

"Substantial evidence" is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.  This is a lower standard of proof than preponderance of the evidence.[9]  5 C.F.R. § 1201.4(p).  The Board's reviewing court has explained that the "substantial evidence" standard determines whether the decision could reasonably have been made, not whether it was correctly made."  *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 840 (Fed. Cir. 2015).

To sustain an action based on substantial evidence, there must be "more than a mere scintilla of evidence," but a quantum "less than the weight of evidence" is all that is required.  *See Jones v. Department of Health & Human Services*, 834 F.3d 1361, 1366 (Fed. Cir. 2016).  Under this deferential standard, if the record supports several reasonable, yet contradictory, conclusions, a decision should not be overturned simply because one reasonable conclusion was selected over another.  *See In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

The Board has no authority to mitigate an action taken under section 714 of title 38 and the reasonableness of an imposed penalty, along with a consideration of mitigating and aggravating factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), is immaterial.  *See* 38 U.S.C. § 714(d)(2)-(3).  Section 714(a)(1) also eliminates the efficiency of the service requirement by vesting the agency with the authority to take such action if the "Secretary determines the performance or misconduct [of the employee] warrants such removal, demotion, or suspension."  *See* 38 U.S.C. § 714(a)(1); *see also Lisiecki v. Federal Home Loan Bank Board*, 23 M.S.P.R. 633, 639-40 (1984) (explaining Congress

---

[9] Preponderant evidence is that degree of relevant evidence a reasonable person, considering the record as a whole, would accept as sufficient to find a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

expressly rejected the efficiency of the service standard for actions taken under chapter 43 of title 5).

<u>The agency proved charges 1 and 3 (unacceptable performance in critical element 2, Timeliness) by substantial evidence.</u>

Charges 1 and 3 relate to critical element 2, Timeliness.   The OGC Attorney Performance Standard Guidelines indicate as follows:

> Timeliness in the provision of legal services is critical to ensure effective legal representation and counsel.  This includes ensuring the Secretary meets Department's due dates in litigation as well as commitments to Veterans.   This also includes consistently communicating time-sensitive and/or instructional information to VA stakeholders to enable those stakeholders to take appropriate action to identify and mitigate risk.  To accomplish this, assigned work, as designated, must be timely submitted for supervisory review (as applicable), entered in GC LAWS, timely filed, and/or timely communicated to stakeholders as appropriate.

IAF, Tab 11 at 466.

The Specific Measure for Timeliness consists of the following:

- The attorney regularly discusses with the stakeholder the stakeholder's needs regarding the timeliness of the advice or assistance and, when feasible and appropriate, the attorney establishes a timeframe for response in coordination with the stakeholder.

- In cases where a timeframe(s) for response is coordinated with the stakeholder or established by OGC, attorney regularly responds to the stakeholder within the timeframe(s), absent circumstances outside the attorney's control.

- Attorney regularly complies with applicable deadlines and the government suffers no harm as a result of missing a deadline, unless due to circumstances beyond the attorney's control as determined by the supervisor.

*Id.*

To be fully successful in critical element 2, the appellant had to:

- Regularly meet appropriate measures and deadlines without sacrificing the quality of the response, advice, or work product.

- Respond to stakeholders in an appropriate and timely fashion. Any anticipated delays are communicated to the stakeholder in advance.

IAF, Tab 11 at 466.

Examples of actions that do not meet the Timeliness standard include:

- Action or inaction by the employee caused deadlines to be missed frequently.

- Employee is unable to prioritize or appreciate the consequences of missed deadlines.

- Missed deadlines result in harm to the stakeholder.

- Employee does not take responsibility for missed deadlines, does not involve supervisor, or otherwise does not work to correct the error.

*Id.*

Charge 1

For charge 1 (unacceptable in Timeliness for the period covering October 1, 2016 through September 30, 2017), the agency asserted that supervisory observations and a review of GC LAWS and reports revealed at least 31 instances in which the appellant had failed to respond within 7 calendar days to the Debt Management Center (DMC). *See* IAF, Tab 10 at 241-44).

GC LAWS is the OGC's main case-tracking system. HT1 at 25. DGC Hipolit testified in this regard as follows:

Each assignment that our attorneys get is entered into the system. It gets an assignment number and you can go and search and find cases … it would indicate … who was assigned to the case when it came in, what actions were taken. There's case notes that would enter -- you can enter electronic copies of documents in there.

And so if somebody wanted to see what was going on in a case they could look at the notes and look at the documents. So it's a … very final tool to us for managing a case load and the supervisors use it extensively to keep track of things. I use it still myself. It's extremely important for the first and second-line supervisors as well to keep track of what's going on, …, with their work load.

Also, it's a time-keeping device where attorneys enter how much time they're spending on particular cases. And -- so if they were

spending, ..., three hours on a case in a particular day, they would enter that and then you could see how much time an attorney has spent on a particular case and you can aggregate data from that.

It's a[n] important tool ... for the supervisors to manage what their people are doing, what they're spending their time on, how long they're taking to complete particular assignments, and ... we also use it for budgeting purposes to get a handle on how much work we're doing in different areas, ..., for resource management.

HT1 at 25-26.

Moreover, DGC Hipolit, CC Oddo and DCC Duncan all testified that CNPG attorneys must adhere to a service level agreement (SLA) with their stakeholder, the DMC, which has been in effect since January 28, 2016.[10] HT1 at 22-23, DGC Hipolit's testimony; HT1 at 123, CC Oddo's testimony; HT1 at 207, DCC Duncan's testimony.

There is no dispute that the appellant was aware of the 7-day deadline within which to respond to the DMC, and the SLA sets forth that "absent *exigent* circumstances (e.g. novel or complex issue or, conversely, a time- sensitive issue), the assigned OGC office will provide a substantive response within seven (7) days of receipt of the facts and documents (as applicable) supporting the request." IAF, Tab 11 at 10 (emphasis added).

There is also no dispute that the appellant was reminded of the 7-day requirement at the CNPG national conference in April 2017, via numerous emails, telephone conversations, and during an in-person conversation with DCC Duncan. HT1 at 187 and 201-02, DCC Duncan's testimony; HT1 at 18 and 41, DGC Hipolit's testimony. The record contains a June 19, 2017 email from CC Oddo to DCC Duncan wherein she indicated that on said date, she had discussed the importance of completing assignments in a timely manner with the appellant. *See* IAF, Tab 11 at 129. As mentioned above, the appellant was also reprimanded

---

[10] The 7-day requirement was a term included in the SLAs signed on January 28, 2016 and January 17, 2017. IAF, Tab 11 at 13, 19 and 21.

on July 5, 2017 for failing to complete assigned tasks in a timely manner.  *Id.*, Tab 10 at 75-76.  Moreover, on July 20, 2017, DCC Duncan sent him an email reminding him of the 7-day substantive response time.  *See* IAF, Tab 11 at 130-68.  Finally, on August 24, 2017, DCC Duncan reminded him again of the 7-day requirement pertaining to DMC requests.  *See id.* at 207-09.

> At the hearing, CC Oddo testified as follows:

> I know that I've talked to Larry on multiple occasions.  I remember an occasion in June, specifically, of 2017 where Larry had come to me, and he wanted me to give him an extension last minute on a deadline that his supervisor had given him.  I did not.  And we ended up having a really lengthy conversation about prioritizing work, not waiting until the last minute to do assigned work.

> Having a clear understanding of expectations, I recall during the conversation Larry had indicated -- just because his supervisor gives him an assignment, does that mean that he has to drop everything to do it, and I said yes.  And I stressed the importance of communicating competing priorities to your supervisor.

> We talked about work/life balance during that conversation as well.  So I believe I personally set clear expectations.

> I reached out to Larry in October even[,] to really try to understand where there were problems or what I could do to help.

> I believe that -- from what I understand of the record -- I believe that his supervisor worked with him diligently as well.

> So I do believe that the expectations were clear. The clearest expectation was he got a reprimand for failing to follow supervisory instructions in July.

> So yes, I think that the expectations were clear, and the opportunity to make meaningful improvement in Larry's performance was there and it was for Larry to have.

HT1 at 133-34.

For each of the 31 cases the appellant was charged with providing untimely service, the agency provided: case numbers; the date of contact by the stakeholder at issue; the response date; and a tally of the number of days elapsed since the appellant's receipt of the requests.  IAF, Tab 10 at 242-43.  A review of this information reveals that the time elapsed from the appellant's receipt of an

inquiry to when he responded ranged from 10 to 147 days. *See* IAF, Tab 10 at 240-51 (proposal letter); *see also id.*, Tab 11 at 22-128 (attachments 2-32). These assignments were received between March 2017 and August 2017. *Id.*, Tab 10 at 242-43; *see also id.*, Tab 11 at 22-128 (attachments 2-32). Of the 31 cases for which the appellant failed to meet a deadline, he was more than 2 weeks late in all but 4 of them. Several of them were missed by over 100 days. *See id.*

As to the issue of whether the cases were complex, which would have warranted more time for a response, CC Oddo testified as follows:

> Part of Larry's job was to perform recoupment reviews, which are a -
> - a noncomplex transactional matter. So during the [rating] period,
> there were a number -- I think over 30 examples of untimely
> [recoupment] reviews. Not a little bit untimely, a lot untimely.

HT1 at 123-24.

She also testified that in several of these matters, veterans had to call back repeatedly to get their issues resolved, which she found to be problematic:

> [T]o me, that was a problem, because it really showed sustained and
> continued untimeliness and failure to meet very clearly set out
> expectations.

> Moreover, something that I thought was significant was … that there
> were two examples on that list. One case was … the veteran had
> been calling, like, four times, repeatedly calling to follow up on the
> legal service status.

> And there was another situation where the client … that management
> center had sent multiple communications saying that they had gotten
> calls from the veteran -- from the veteran's attorney. And on that
> one, I think … in both cases, his first-line supervisor intervened and
> directed him to make these cases a priority.

> So that troubled me. … [F]or me, it reflected a continued pattern.

HT1 at 128-29, CC Oddo's testimony.

During the appellant's testimony, he did not dispute CC Oddo's version of events. He did not indicate he had to request further information from the DMC before proceeding with respect to these 31 cases or, that he had to complete additional time-consuming research before providing a response. *See generally*

HT2, appellant's testimony.  Nor did he dispute having missed the 7-day deadline within which to respond.  Rather, he claimed that the DMC inquiries were a small portion of his work but failed to articulate how the proportion of his DMC inquiries compared to his other work or, why he believed it was acceptable for him to miss deadlines for any portion of his work despite the reminders and reprimand that he was issued.

I have also considered the appellant's claim that he prioritized his other tasks over the DMC inquiries.  However, he failed to provide any documentation or testimony to the effect that he had discussed his priorities with his supervisors and, that they agreed with the manner in which he had set them.  HT2 at 73-76.

As to the appellant's claim that he had such a heavy workload rendering it almost impossible for him to complete his assignments in a timely manner, DGC Hipolit and CC Oddo testified to the contrary.

First, DGC Hipolit testified as follows:

Q: Now … you indicated that Mr. Brenner on one or more occasions indicated that he had an extensive workload; is that correct?

A: That's correct.

Q: And in fact when you issued that decision on the July reprimand, you mentioned that issue in your -- in your decision; is that correct?

*****

[Referring the witness to IAF, Tab 10 at 103]:

A: I did address the issue of workload.

Q: Right.  And so --

THE COURT: So you did address the issue of --

A:  Of workload.  I said, "[W]hile undoubtedly -- while Mr. Brenner undoubtedly had other assignments during the period in which he was asked to complete the assignment regarding New Jersey Workers Compensation cases, GC Laws [data does not establish that][11] Mr.

---

[11] Here, the hearing transcript indicated "GC Laws stated (indiscernible)."  HT1 at 95. Since DGC Hipolit was reading from his "Decision in the Matter of Lawrence Brenner,"

Brenner's workload was so heavy that it would have prevented him from completing [t]his assignment in a timely manner."

Q: And do you know, am I correct that Mr. Brenner's management never did anything to address his concerns about having a heavy workload; am I correct?

A: No, I wouldn't -- I wouldn't say that. Mr. Brenner's supervisor reached out to him to try to see if they could discuss with him his workload. I don't believe he was responsive to that. From what I could -- I didn't see in the record that it never worked out. But I remember [CC] Oddo reaching out to him saying, let's – let's discuss your workload, see how we can get under control or, you know, in a way we can manage it.

Q: Do you know in what form she reached out to him?

A: I believe I saw it in some email messages, a stream of email messages.

HT1 at 94-96.

CC Oddo testified similarly, indicating she could not understand why the appellant worked so many hours despite the fact his workload did not appear to require such extensive work hours:

A: So at some point into 2017, what I began to see is a deflection of responsibility …, it came up in his grievance. I remember this on the reprimand. He -- his work load is so heavy and it's so imbalanced that he's forced to work seven days a week, nights and weekends. So that then is on my – that's on my watch.

And so my instruction there was -- in the context of I was sitting in my office on Columbus Day. I was doing his assignment in connection with the New Jersey Workers' Comp. I had asked Larry -- after I had finished it -- to review just the citations. There had been different drafts. I wanted to make sure the citations still matched. Larry's response was that he didn't know if he'd be able to get that done before he left for vacation a day and a half later.

So I simply asked Larry to please prioritize this assignment. If he didn't get it done, let me know what is left and that I wanted him to do this assignment. And then in that, I felt that I was in that

what was being said where it indicates "indiscernible" should read: "GCLAWS does not establish that …" IAF, Tab 10 at 103.

> situation again where I was giving him an assignment, that he was implying would have to be done on his vacation because he was busy, and I -- that bothered me.
>
> So in an effort -- and during this time, there was just this deficiency and the ability to timely complete assigned work.

HT1 at 130-31.

In further support of charge 1, the agency listed the April 27, 2017 assignment at issue in the July 5, 2017 reprimand. In said instance, after receiving the assignment on April 27, 2017, the appellant requested an extension of time on May 16, 2017. *See* IAF, Tab 11 at 169. Despite having been granted until May 22, 2017 to draft the letter for the chief administrative law judge, *see id.*, as of July 5, 2017 (the date on which he was issued the reprimand), he had yet to complete it. *See id.*, Tab 10 at 75-76.

On July 19, 2017, DCC Duncan reminded him of this assignment, and granted him a new due date of July 24, 2017. When he finally provided his first draft on July 24, 2017, DCC Duncan advised him it still needed work and supplied him with some research she had done, asking him to provide a new draft by July 28, 2017. *See id.*, Tab 11 at 173.

However, on the new due date of the draft, the appellant sought yet another extension (which was granted), until July 31, 2017. *See id.* He then requested another extension on July 31, 2017, after which the due date was extended once again, to August 2, 2017. *See id.* at 172.

On August 2, 2017, the appellant requested another extension, at which point it was extended once more to August 4, 2017. *See id.* Despite all the extensions, when it was finally provided, CC Oddo determined it was still not satisfactory and provided him with detailed instructions concerning the substance, form and tone of the letter. In addition, she requested to meet with him to discuss ways in which to improve the final draft. *See id.* at 174. CC Oddo testified that ultimately, she had to complete the letter herself:

> [A]fter Larry received the reprimand, … -- his supervisor had to give him another direct instruction to actually complete the assignment. He did not complete the assignment for a few weeks, even after he got the reprimand in July.
>
> When he sent an original draft, it was not a draft that was appropriate to send, and he did a lot of work.
>
> Ultimately, I took over the assignment myself in October, and the issue was resolved.  So, to me, that was a significant issue of timeliness in the delivery of legal services.
>
> There are also another couple of instances where we sometimes get referrals from our sister OGC offices.  And there were a couple of instances where an office had sent Larry something that would fall in our purview to respond to, and it required follow-up from the chief counsel of that office before the service was attended to.
>
> So those were the specifics on the timeliness in the first charge that I thought reflected an overall unsuccessful performance in that category.

HT1 at 124-25.

> DGC Hipolit testified similarly, as follows:
>
> So Mr. Brenner was assigned to write a letter to the judge, to try and convince the judge, you know, recognize any VA attorney that was -- a licensed attorney.  So after receiving the assignment, Mr. Brenner's supervisor followed up for them after a period of time and asked him, …, if he had completed the assignment.  And he asked for an extension at that time.  The supervisor granted him an extension, actually a greater extension than he had actually asked for and then after the extension had run out, the work still hadn't been completed and the supervisor had to follow-up first.
>
> This actually went on for several weeks after the extended deadline before anything really got done and that supervisor ended up helping him out, and I think giving him some legal research materials.  And I think he finally produced a draft, but then the supervisor had to rework it and ended up taking over the matter.  So that was another matter that was [an] additional instance of untimely activity.

HT1 at 23-24.

Finally, charge 1 referred to 2 instances in which the appellant had failed to provide timely responses to District Chief Counsel offices.  *See* IAF, Tab 10 at 25.  Both CC Oddo and DGC Hipolit testified that even with internal OGC

clients, the appellant had a pattern of requesting extensions.  HT1 at 125 and 24, respectively.

In support thereof, the record contains an email, dated June 28, 2017, wherein CC Oddo tasked the appellant with reviewing an email and responding to an issue brought by Pacific District South's Chief Counsel, Mark Romaneski (CC Romaneski), pertaining to the question of where a restitution check needed to be deposited.  *See* IAF, Tab 11 at 175-98.  As evidenced by CC Romaneski's email to the appellant, dated July 20, 2017 (nearly a month from the date this matter was assigned to him), as of that date, he had not yet responded.  *See Id.* at 200.  The appellant finally responded that same day; however, this was only after CC Romaneski followed up with him – more than 3 weeks from the date the task was assigned.  *See id.* at 199-201.

The second instance involving an internal OGC client related to an email, dated July 27, 2017, from a staff attorney out of the Midwest District West office, wherein legal assistance about a bankruptcy court order was requested.  *See id.* at 205.  In response, the appellant indicated, "I'll take a look tonight."  *Id.* However, not having received a response, by email dated September 6, 2017 (over a month from the date he had requested assistance), the staff attorney followed up, at which point the appellant finally responded – nearly 6 weeks from the date he received the request.  *See id.* at 204.

As indicated above, the appellant's testimony did not refute the deficiencies set forth in the notice of proposed removal regarding this charge. After considering all the relevant evidence, I find the appellant's performance was "unacceptable" in critical element 2, Timeliness, for the period covering October 1, 2016 through September 30, 2017.  While offering excuses for his untimeliness, the appellant largely failed to contradict the record evidence and descriptions of unacceptable performance, as testified to (and corroborated) by

DGC Hipolit, CC Oddo, and DCC Duncan[12].  This failure to respond to DMC inquiries in a timely manner, as well as to provide a draft letter for the chief administrative law judge and responses to internal OGC clients, did not involve complex issues warranting additional time.  Rather, they involved the appellant's failure to meet deadlines, specifically the SLA 7-day turn-around time and, additional deadlines as set by his supervisor.  To prevail, the agency's evidence need only be substantial.  I find the record more than supports the agency's burden to establish a factual basis for its charge.  Because the agency has proven the charge by substantial evidence, it is SUSTAINED.

Charge 3

As for charge 3 (unacceptable in Timeliness for the rating period beginning on October 1, 2017), the agency asserted that the appellant again failed to meet the 7-day response time for DMC inquiries beginning on October 1, 2017.  In support thereof, the agency listed 36 instances, as well as provided the same kind of documentary evidence (described above pertaining to charge 1), in which the deadline was not met.  *See* IAF, Tab 10 at 246-50 (proposal letter); *see also id.*, Tab 11 at 315-443 (attachments 55-90).

Of the 36 instances requiring a response, as of March 11, 2018, the appellant had failed to respond at all to 22 of them.  *See id.*, Tab 10 at 248 (proposal letter); *see also id.*, Tab 11 at 315-443 (attachments 55-90).  The time elapsed from the appellant's receipt of an inquiry to his response ranged from 8 to 334 days.  *See id.*; HT1 at 31-32, DGC Hipolit's testimony.  In connection with 2 of these instances, the client was forced to follow-up with him after receiving

---

[12] When resolving issues of credibility, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering, among other factors, the contradiction of the witness's version of events by other evidence or its consistency with other evidence. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

calls from veterans, which resulted in DCC Duncan having to direct the appellant to complete these tasks. *See* IAF, Tab 10 at 248-49.

> In this regard, the proposal letter indicated as follows:

> In connection with Attachment 56, the DMC requested your review of a bankruptcy question on 10/31/17. The DMC had to follow up on 2/21/18, explaining that they had received four or more calls from the Veteran. On 2/23/18, your supervisor intervened, directing you to prioritize this case. (Attachment 91)

> In connection with an initial 5/23/17 client request for bankruptcy guidance on a matter involving a VA home loan the client emailed to you multiple requests for status, noting that they had received calls from the Veteran and the Veteran's attorney. On 2/14/18, your supervisor intervened, and advised you how to respond to the client. (Attachments 92 and 93).

*Id.*; *see also id.*, Tab 11 at 444-47 (attachment 91), and 448-453 (attachments 92 and 93).

> CC Oddo testified as to the reasons for finding the appellant's performance to be "unacceptable" in critical element 2, Timeliness, for the rating period beginning on October 1, 2017, as follows:

> So the third charge, this one was really important to me, because I wanted to look at what Larry's performance was like at the start of the next fiscal year. And what I found is that his performance -- in the category of timeliness -- it had gotten worse, not better.

> So in the whole fiscal ... start[ing] in October of 2016 -- I think that on these [recoupment] reviews, there were like 30-something -- 31, 30 examples, and the average processing time was a little over 70 days.

> When I looked at the first half of the next fiscal year, there were 36 examples, and the average processing time was like 85 days. So –

> *****

> -- to me, that was a problem, because it really showed sustained and continued untimeliness and failure to meet very clearly set out expectations.

> Moreover, something that I thought was significant was I saw that there were two examples on that list. One case was like the veteran

had been calling, like, four times, repeatedly calling to follow up on the legal service status.

And there was another situation where the client – [the] management center had sent multiple communications saying that they had gotten calls from the veteran -- from the veteran's attorney.  And on that one, I think that -- in both cases, his first-line supervisor intervened and directed him to make these cases a priority.

So that troubled me.  It -- for me, it reflected a continued pattern.

HT1 at 127-29.

For the same reasons mentioned above as to charge 1, I find that the appellant's performance was "unacceptable" in critical element 2, Timeliness, for the rating period beginning on October 1, 2017.  The appellant failed to refute the agency's evidence and testimony in regards to this charge and, DGC Hipolit, CC Oddo, and DCC Duncan, all corroborated his unacceptable performance in Timeliness beginning on October 1, 2017.  I find the record more than supports the agency's burden to establish a factual basis for its charge by substantial evidence.  Because the agency has proven charge 3, it is also SUSTAINED.

<u>The agency proved charge 2 (unacceptable performance in critical element 3, Professional Responsibility and Accountability), for the rating period covering October 1, 2016 through September 30, 2017, by substantial evidence.</u>

Pursuant to the OGC Attorney Performance Standard Guidelines, the General Measure for critical element 3 consists of the following:

The attorney must comport him or herself in a professional manner and exhibit VA's core values of Integrity, Commitment, Advocacy, Respect, and Excellence (ICARE).  The attorney follows instructions conscientiously, exercises independent professional judgment and candor, and renders sound advice to stakeholders, considering not only the law but also ethical considerations and the attorney's responsibility to the Secretary, the Department, and Veterans.  The attorney must accept responsibility for any mistakes of the attorney, appropriately safeguard confidential communications, proactively work to resolve issues as they arise, and notify supervisors and stakeholders of mistakes to ensure appropriate resolution.  Any issues in violation of ethical rules or not in support of the

Department's mission that are identified by the attorney or brought to the attorney's attention are promptly communicated to supervisor.

IAF, Tab 11 at 467.

The Specific Measure upon which to gauge performance in element 3 is defined as follows:

> Through daily action, the attorney consistently communicates and models a positive and unified ICARE message to peers and stakeholders, and exhibits a high level of professional responsibility. No mistakes by the attorney or issues identified by the attorney go unreported to supervisor or other appropriate personnel in a timely fashion, such as to allow for an opportunity to remedy. The attorney will remedy mistakes to the supervisor's satisfaction.

*Id*.

To be considered "fully successful" in critical element 3, Professional Responsibility and Accountability, the appellant had to:

- Demonstrate ICARE values with peers.
- Routinely exercise independent professional judgment.
- Notify supervisors of mistakes and work toward resolution.
- Promptly communicate issues believed to be in violation of ethical rules or not in support of the Department's mission.

*Id*. Finally, the guidelines list an employee's failure to take ownership of errors and problems as an example of not meeting this critical element. *See id.*

In support of charge 2, the agency alleged the appellant had backdated his notes in GC LAWS to reflect same day service in 7 cases despite the fact no such timely service had been provided. *See id.*, Tab 10 at 245. When confronted about this issue, the appellant allegedly claimed he "always backdate[s]" his notes in this manner, although a review of previously-entered notes in GC LAWS did not support his claim. *See id.*

The record contains a September 6, 2017 email from DCC Duncan to the appellant wherein she noted that he had backdated his entries in GC LAWS, making it appear as though he had provided same-day service, when, in fact, he had not. *See id.*, Tab 11 at 207-08. She stated in her email as follows:

> Per our discussion, you responded this past weekend to a number of over-due inquiries from the DMC. In reviewing your GC [LAWS] entries, your notes and time entries are back-dated.
>
> As I noted, some of the inquiries were a month old while others were a couple of weeks old.

IAF, Tab 11 at 207-08. In response, rather than acknowledging his mistake, the appellant stated as follows:

> [D]espite the date of the progress note, which was merely to be utilized as an "as is" date, it was never my intention nor did I ever have an ulterior motive to conceal or hide the date I was imputing this note into GC Laws, since as I explained to you yesterday, the actual entry date that the progress note is imputed, is also noted in GC Laws. I have been utilizing and entering progress notes in GC Laws since GC Laws was first utilized by General Counsel over 10 years ago.

*Id.* at 207. However, when DCC Duncan subsequently went into GC LAWS, she determined that his justification was actually untrue since 15 of his previously-entered entries had not been backdated. *See id.* at 243-295 (attachment 51).

DCC Duncan's testimony pertaining to this charge consisted of the following:

> [I]n reviewing his GC Laws … following the Labor Day holiday, I saw that Mr. Brenner had been in the office. In looking at the entries that were made, there were a number of entries that had been backdated, which caused some concerns. So I had to go through and see why they were backdated, and I could not ascertain why it was, other than there were weeks, if not months, in between the request from the client to the time that Mr. Brenner responded to the client.

HT1 at 191-92.

> CC Oddo's testimony corroborated the above:
>
> In September of 2017, Larry backdated his time entries in our automated time and case management system. We have an electronic case management system. And the system reflects to the date that you're actually entering the note, so to change the date, you actually have to manually backdate it.
>
> So there was a number – half a dozen so examples where Larry had manually backdated the electronic case entry to reflect same day

> service, instead of an untimely service.  It was … in the context or
> recruitment reviews.
>
> [] [S]o that's a problem.  When asked about it, Larry responded that
> he was trying to match up payment information – which makes no
> sense – and that this had been his past practice, and that's just not
> accurate.
>
> On review of Larry's past case entries, he did not backdate his time
> entries.  So from an accountability perspective, it's a problem to
> backdate your time entries.
>
> It's also a problem – when confronted about it, what I know for sure
> is that the response that Larry provided as to why he'd done that, it
> doesn't make sense, and it's not born out by the GC LAWS[13] record.

HT1 at 125-26.  Finally, DGC Hipolit testified that it is important to enter accurate information into GC LAWS because it is the OGC's main means of tracking all of the attorneys' assignments.  HT1 at 24-26.

The second instance upon which the agency relied in support of its charge that the appellant's performance in critical element 3 was unacceptable consisted of its claim that the appellant had failed to notify his supervisor of a mistake he made pertaining to his request for a New Jersey-licensed attorney to cover a May 2, 2017 workers' compensation hearing for him.  *See* IAF, Tab 10 at 246; *see also id.*, Tab 11 at 301.

Here, DCC Duncan had found a staff attorney from the agency's North Atlantic District North (NAN) to cover for him.  On May 2, 2017, that attorney traveled to the hearing location and sat through the calendar call in which nearly 70 cases were called, after which she realized the case she was there on was not to be heard that day.  *See id.*, Tab 11 at 303-314.  When the case was not called, the staff attorney consulted with the judge, who told her that the hearing date for her case was actually May 10, 2017.  *See id.*  However, the appellant did not notify DCC Duncan about his error.

---

[13] The transcribed record indicates "GC loss" which is a typographical mistake since the name of the agency's case management system is "GC LAWS."

The record contains an email, dated May 4, 2017, from Joseph G. Moreno, Chief Counsel for NAN (CC Moreno), addressed to DCC Duncan and CC Oddo, wherein he expressed his frustration with the appellant's mistake and, with his practice of reaching out directly to other attorneys requesting coverage without going through his supervisory channels.  *See* IAF, Tab 11 at 303.  In relevant part, his email read as follows:

> FYI and situational awareness.  While we certainly do not mind lending a hand (when we can) I can't say I was a happy camper after juggling schedules and altering previously planned work of our staff to have our SME essentially spend a good portion of the day for naught, because Larry did not have the correct return date.  ….
>
> \*\*\*\*\*
>
> In all honesty it also troubles me a bit that Larry apparently asked one of our tort SMEs (Nancy O) to make an appearance on the same matter last month directly to our staff rather than having that request come from you to me.  I get that due to the time he previously spent assigned to the Brooklyn office he may still view our staff there as his office mates, but am concerned he may be viewing them as the equivalent as Brooklyn 911, rather than vetting these issues first through you and having any request for assistance come through you, like you did in your e-mail of 4/28.

*Id.*

In this regard, DCC Duncan testified that the appellant had failed to inform her of his mistake and, that she first learned of it when CC Moreno sent her the above email, 2 days after the attorney appeared for the proceeding on May 2, 2017.  HT1 at 192-96; *see also* HT1 at 29-30, DGC Hipolit's testimony; HT1 at 179-82, CC Oddo's testimony.  Consequently, DCC Duncan found the above incident to constitute a failure, on the appellant's part, to accept responsibility and to acknowledge his mistakes.  HT1 at 192-96.  She noted that he had failed to communicate his error and, to exhibit professionalism regarding same, which demonstrated unacceptable performance in critical element 3, Professional Responsibility and Accountability.  *See id.*; *see also* IAF, Tab 11 at 457.

On the other hand, the appellant disputed her claim that he failed to take responsibility for his error. Rather, he testified that by virtue of the fact he later apologized to DCC Duncan, he had taken responsibility. HT2 at 105. However, both DGC Hipolit and DCC Duncan testified that this critical element required the appellant to tell his supervisor about his mistake right after it occurred, not when he was approached about it. Here, the appellant did not apologize until confronted about it by DCC Duncan. HT1 at 29-30, DGC Hipolit's testimony; HT1 at 215 and 227, DCC Duncan's testimony.

In light of the evidence and testimony described, I find that the agency has met its burden of proof, by substantial evidence, that the appellant's performance in critical element 3, Professional Responsibility and Accountability, was "unacceptable" for the time period at issue. The appellant's decision to backdate his GC LAWS entries following his receipt of a reprimand for untimely performance of his duties evinced a lack of professionalism and accountability, especially in light of the fact DCC Duncan's subsequent review of his previously-entered information into GC LAWS did not show this was his prior practice, as he alleged. Moreover, his decision to refrain from telling his supervisor about the mistake he made pertaining to the May 2, 2017 hearing date suggests a failure to accept responsibility for his errors. Although I have considered his testimony to the effect he tried to notify his supervisor through someone else, the record is devoid of anything which supports his claim. In fact, the appellant himself testified that he never confirmed his supervisor had been notified of his mistake by the person he allegedly told. In this regard, the appellant testified as follows:

> What happened was I didn't have, at that point, Mrs. Duncan's direct telephone number. Otherwise, I would have called her. But worked with Kim Maroni on a number of cases and I had Kim's telephone number. I had former [sic] smart phone with me. Got in the car with my son. We were on our way home. You know, we had a little bit of time. You know, we stopped to get a bite to eat.

> I called Mrs. Maroni and I said, "Kim …, can you notify Anne-Marie Duncan?" I believe Kim had Mrs. Duncan's telephone number. Kim

> said she did. Before I finished my meal, I spoke [to] Ms. Maroni again and I believe she indicated that … Mrs. Duncan was notified, but I -- you know, whether or not Mrs. Duncan was. I don't have any personal knowledge that -- I did not speak to Mrs. Duncan at that point.

HT2 at 93-94. For these reasons, charge 2 is also SUSTAINED. In light of the fact all 3 charges have been SUSTAINED by substantial evidence, the agency's removal penalty must be AFFIRMED. *See* 38 U.S.C. § 714(d)(2)(B).

Affirmative defenses

The appellant asserted the affirmative defenses of: (1) disability discrimination (disparate treatment); (2) age discrimination; (3) reprisal for engaging in protected EEO activity; (4) retaliation for whistleblowing; (5) harmful procedural error by virtue of the fact it failed to abide by VA Handbook 5013, Part 1; and (6) due process violation in light of the deciding official's refusal to recuse himself. He bears the burden of proving his affirmative defenses by preponderant evidence[14]. 5 C.F.R. § 1201.56(b)(2)(i)(C).

The appellant failed to establish his affirmative defense of disability discrimination (disparate treatment) by preponderant evidence.

In support of his affirmative defense of disability discrimination, the appellant alleged that after his April 2015 accident, he began to experience discriminatory actions following his return to work in October 2015. First, he was transferred to the CNPG by George Burns, former Chief Counsel for NAN (CC Burns). *See* IAF, Tab 9 at 6. However, prior to the appellant's return to work, CC Burns allegedly told Jack DiTeodoro (another attorney in the office), that the appellant was being reassigned because "How can I send [him] to court?" *Id.* at 6. In addition, he alleged that when Michael Berger (another attorney in the office), inquired about why the appellant could not stay with the team, CC Burns

---

[14] *See footnote* 9 above.

had responded, "What are we going to do[,] send a guy in a wheelchair to court?" IAF, Tab 9 at 6.

As a Federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973. *Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 8 (2010). However, the Equal Employment Opportunity Commission (EEOC) regulations implementing the Americans with Disabilities Act (ADA), as amended by the Americans with Disabilities Act Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (ADAAA), have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation or not. *Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 23 (2015); 29 C.F.R. § 1614.203(b).

To prove disability discrimination, the appellant must first prove that he is an individual with a disability as the term is defined in the ADAAA and the EEOC regulations. *Thome*, 122 M.S.P.R. 315, ¶ 24 (citing *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579, ¶ 38 (2012)). The appellant may establish that he has a disability by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment. 42 U.S.C. § 12102(1), 29 C.F.R. § 1630.2(g)(1),(2),(3). The definition of disability is construed in favor of broad coverage. 42 U.S.C. § 12102(4)(A). Here, the appellant established the existence of a physical impairment that substantially limits one or more of his major life activities (amputation of his lower, right leg, below the knee, making it difficult for him to ambulate, *see* HT2 at 10, appellant's testimony). *See* 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1),(2),(3).

An appellant may establish a disability discrimination claim based on disparate treatment by showing that: (1) he is a member of a protected group; (2) he was situated similarly to an individual who was not a member of the protected

group; and (3) he was treated more harshly than the individual who was not a member of her protected group. *Smith v. Department of Interior*, 112 M.S.P.R. 173, ¶ 18 (2009). For employees to be deemed similarly-situated for purposes of a disparate treatment discrimination claim, all relevant aspects of the appellant's employment situation must be "nearly identical" to those of the comparator employees. *Brown v. Department of Interior*, 121 M.S.P.R. 205, ¶ 27 (2014) (citing *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 37 (2014)).

Where, as here, an agency has already articulated a nondiscriminatory reason for its action, the inquiry is whether, upon weighing all the evidence, the appellant has met his burden of proving that the agency intentionally discriminated against him based on one or more of his disabilities. *Brown*, 121 M.S.P.R. 205, ¶ 26 (citing *Fox*, 120 M.S.P.R., 529, ¶ 36). The evidence to be considered at this stage may include: (1) the elements of the prima facie case; (2) any evidence the employee presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination or retaliation that may be available to the employee, such as independent evidence of discriminatory statements or attitudes on the part of the employer, or any contrary evidence that may be available to the employer, such as a strong track record in equal opportunity employment. *Id.*

While such evidence may include proof that the employer treated similarly-situated employees differently, an employee may also prevail by introducing evidence: (1) that the employer lied about its reason for taking the action; (2) of inconsistency in the employer's explanation; (3) of failure to follow established procedures; (4) of general treatment of disabled employees or those who engage in protected activities; or (5) of incriminating statements by the employer. *Id.*

Having considered the record, for the reasons that follow, I find that the appellant failed to establish discrimination based on his disability. First, he failed to offer any evidence of being treated more harshly than someone not in his protected group. Rather, he merely contended that agency officials treated him

less favorably because of, among other things, his disability. However, he did not produce any evidence of other attorneys missing deadlines or, failing to bring mistakes to their supervisor's attention or, failing to take responsibility for their mistakes but being treated better than he was. Just because he was the only employee removed for unsuccessful performance, in and of itself, does not mean he was being discriminated against on account of his disability. In fact, CC Oddo and DCC Duncan testified that no other attorneys in the CNPG received an "unacceptable" rating simply because none of them were performing unacceptably. HT1 at 168, 188 and 202.

Second, the appellant failed to present any circumstantial evidence showing: that the agency lied about its reason for removing him; that its explanation for removing him was inconsistent; that the agency generally treats disabled employees less favorably; or, any incriminating statements by the officials involved in his removal. Here, DGC Hipolit, CC Oddo, and DCC Duncan all provided credible testimony to the effect that the appellant's disability played no role in their decisions. HT 1 at 45-46, DGC Hipolit's testimony; HTI at 135-36, CC Oddo's testimony; HT1 at 197-98, DCC Duncan's testimony. Moreover, both DGC Hipolit and CC Oddo testified that they have managed employees with disabilities and have personally made accommodations for them in the past without any incident. HT1 at 45-46 and 136, respectively. Finally, I note that when asked why he believed he was the subject of discrimination, the appellant stated: "[T]his is speculation. It's hard for me to really say this. But I just feel that I was unwanted. I wasn't liked and unwanted." HT2 at 112.

In light of the charge having been sustained, and considering the above, I find that the agency had a reasonable non-discriminatory reason to remove the appellant. I further find that there was no credible evidence that the appellant's removal was based on discriminatory animus as a result of his disability.

It is unclear how CC Burns' comments, assuming he even made them, relate to the performance ratings issued by DCC Duncan, the proposed removal

issued by CC Oddo, and the decision to remove him issued by DGC Hipolit. Although the appellant wishes to attribute CC Burns' alleged words to them, the allegations against CC Burns cannot serve as evidence of DCC Duncan's, CC Oddo's, or DGC Hipolit's motivations.  Nor am I persuaded by his claim that his prior year's "fully successful" rating (or his May 24, 2017 mid-term progress review for that matter), is indicative of the fact his subsequent "unacceptable" ratings were a result of discriminatory animus.  HT2 at 26.  In this regard, DCC Duncan testified that he was rated "unacceptable" for FY17 despite the May 24, 2017 "fully successful" mid-term review because his supervisors were unaware of his GC LAWS deficiencies until after the mid-term appraisal was issued.  HT1 at 190-91.  After reviewing all of the evidence before me, I find that the appellant failed to establish his affirmative defense of disability discrimination by preponderant evidence.

<u>The appellant failed to establish his affirmative defense of age discrimination by preponderant evidence.</u>

Although the appellant alleged his removal was a result of age discrimination, very limited information pertaining to this claim was elicited at the hearing.  HT2 at 10, 18-19, and 40.  Under the Age Discrimination in Employment Act (ADEA), it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. §§ 623(a)(1); 633a, which provides that "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."  Both the EEOC and the Board have held that to prevail, a Federal employee may prove age discrimination by establishing that age was a factor in the challenged personnel action, even if it was not the "but-

for" cause of that action. *Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 7 (2012).

It is undisputed that the appellant was over the age of 40 at the time he was removed. In fact, he testified that in October 2015, he was 65 years old. HT2 at 10. However, there is no direct or circumstantial evidence that his age was actually a factor in the removal at issue here. The appellant did not to present any witnesses or documentary evidence to support his age discrimination claim at the hearing, nor did he personally testify about why he believes his age played any role in the removal decision. Although the proposing and deciding officials were both aware of the appellant's age, each testified credibly that this had no bearing on their proposal and decision to remove him. HT1 at 136, CC Oddo's testimony; HT1 at 47, DGC Hipolit's testimony. Moreover, DGC Hipolit and DCC Duncan were both over the age of 60 themselves. HT1 at 47, DGC Hipolit's testimony; HT1 at 199, DCC Duncan's testimony. Based upon the totality of the evidence surrounding this claim, I find that the appellant failed to show that age discrimination had any bearing on the agency's decision to remove him. Consequently, I find that he failed to establish his affirmative defense of age discrimination by preponderant evidence.

The appellant failed to establish his affirmative defense of reprisal for prior protected EEO activity by preponderant evidence.

The appellant alleged that his removal was reprisal for his protected EEO activity, which is a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). The record reveals that in 2016 and 2017, the appellant filed 2 formal complaints of discrimination (EEOC Hearing No. 520-2017-00242X (Agency Case No. 200H-X002-2016100706) and EEOC Hearing No. 520-2018-00310X (Agency Case No. 200H-X002-2017104653)).

As discussed above, Federal employees are protected against discrimination, as well as retaliation for the exercise of Title VII rights, by 42

U.S.C. § 2000e-16. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 36-37 (2015). The Board has held that a violation is established where the appellant shows that retaliation "was a motivating factor in the contested personnel action, even if it was not the only reason." *Id.*, ¶ 41.

To establish a prima facie case of retaliation for engaging in protected EEO activity, the appellant must show that: (a) he engaged in protected activity; (b) the accused official(s) knew of the protected activity; (c) the adverse employment action under review could, under the circumstances, have been retaliation; and (d) there was a genuine nexus between the retaliation and the adverse employment action. *See Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986); *Cloonan v. United States Postal Service*, 65 M.S.P.R. 1, 4 (1994). To establish a genuine nexus between the protected activity and the adverse employment action, the appellant must prove that the employment action was taken because of the protected activity. *Cloonan*, 65 M.S.P.R. at 4, n.3.

If the appellant meets this burden, the agency must show that it would have taken the action even absent the protected activity. *See Rockwell v. Department of Commerce*, 39 M.S.P.R. 217, 222 (1989). When an appellant asserts an affirmative defense of retaliation under 42 U.S.C. § 2000e-16, the Board will first inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1).

In making his initial showing, an appellant may rely on direct evidence (i.e., evidence that can be interpreted as an acknowledgment of discriminatory intent), or any of the three types of circumstantial evidence, either alone or in combination. The first kind consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the

protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.

The second kind of circumstantial evidence is comparator evidence, consisting of evidence that similarly situated employees were treated more favorably. The third kind consists of evidence that the agency's stated reason for its action is unworthy of belief and a mere pretext for discrimination. *See Savage,* 122 M.S.P.R. 612, ¶ 42. If the appellant meets his burden, the Board then will inquire whether the agency has shown by preponderant evidence that the action was not based on the prohibited personnel practice, i.e., that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. If the Board finds that the agency has made that showing, its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action. *See id.*, ¶ 51.

Here, the appellant's first contact with the EEO office occurred on November 12, 2015, shortly after being re-assigned to the CNPG, at which time he alleged his re-assignment was discrimination based on his age and disability. *See* IAF, Tab 29. On February 22, 2016, he filed a formal complaint of discrimination pertaining to same. *See id.* He amended this complaint on March 17, 2016, alleging that the agency had hired another attorney into his former position, without advertising or posting it, which was "in derogation of [his] rights." *Id.*, Tab 30; *see also id.*, Tab 9 at 7. That matter was assigned Agency Case No. 200H-X002-2016100706, and is currently pending before the EEOC.

On August 18, 2017, the appellant contacted an EEO counselor once again, claiming discrimination on account of his age, disability, and prior EEO activity. *See id.*, Tab 32. In support thereof, he listed the following alleged discriminatory incidents: (1) on December 29, 2016, DCC Duncan directed him to update approximately 130 cases by January 3, 2017 (which he claimed was onerous); (2) at the end of March 2017, DCC prematurely scheduled a mid-term appraisal, which she suddenly canceled at the last minute; (3) on May 25, 2017, DCC Duncan assigned him all future Reimbursable Health Insurance Payer Agreements

(an alleged onerous task which was usually distributed equally between all the attorneys); (4) on June 7, 2017, DCC Duncan directed him to either close out or provide updates for 33 NAN cases (an alleged onerous task for which he was only granted 5 days to complete it); (5) approximately one week after June 7, 2017, he received another assignment for another 33 cases; (6) on July 5, 2017, DCC Duncan issued him a written reprimand for having failed to complete an assignment; and (7) due to a disproportionate workload, he was required to work various holidays at the end of 2016 and the first half of 2017.  *See* IAF, Tab 32[15].

On October 11, 2017, the appellant filed a formal complaint as to these claims.  *Id*.  By letter dated October 18, 2017, Jim Byrne, General Counsel (GC Byrne), was notified of his filing.  *See id.*, Tab 35.  Thereafter, on November 8, 2017, the appellant amended his complaint, to include the claim that CC Oddo had prohibited him from working any extra hours unless he obtained prior approval from DCC Duncan[16].  *See id.*, Tab 33.  On November 14, 2017, all of the above-listed claims were accepted for investigation by the agency's Office of Resolution Management.  *See id.*, Tab 34.  This complaint was assigned Agency Case No. # 200H-X002-2017104653, which is also currently pending before the EEOC.

By letter dated December 19, 2017, the appellant amended his second complaint yet again, adding hostile work environment and retaliation claims.  In support thereof, he listed the following alleged discriminatory actions: (1) on December 1, 2017, Dennis M. McGuire, Grievance Examiner, OGC,

---

[15] The appellant listed almost all of the same alleged discriminatory incidents in support of his subsequent OSC and OAWP whistleblower complaints (wherein he asserted that his supervisors had engaged in gross mismanagement and abuse of authority).  *Compare* IAF, Tab 32 *with id.*, Tab 1, Rider to OSC complaint and Rider to OAWP complaint.

[16] The appellant was required to obtain advanced permission from DCC Duncan any time he wished to work more than one hour before or after his tour of duty or, on weekends, holidays or vacations, or while on leave and/or on holiday time.

recommended that the appellant's grievance pertaining to his July 5, 2017 reprimand be denied; (2) on December 8, 2017, DGC Hipolit issued a final decision accepting the Grievance Examiner's Report and denying the appellant's grievance; (3) on December 7, 2017, DCC Duncan issued a performance appraisal rating the appellant "unacceptable" in 2 critical elements, with an overall rating of "unacceptable"; and (4) on December 7, 2017, CC Oddo approved the performance appraisal issued by DCC Duncan. *See* IAF, Tab 36. This amendment was accepted for investigation on December 22, 2017 and DCC Duncan, CC Oddo, and DGC Hipolit were all listed as discriminating officials therein. *See id.*, Tabs 36 and 37.

There is no dispute that DGC Hipolit, CC Oddo and DCC Duncan were all aware of the appellant's EEO activity. DGC Hipolit testified that in 2017, he became aware of the first complaint but only had a "general sense" of it since he was not involved in it. HT1 at 48. Thereafter, since he was named in the second complaint (DGC Hipolit had rendered a grievance decision pertaining to the appellant's reprimand), he was aware of it in light of the fact he had to provide an affidavit in response thereto. HT1 at 48. However, he testified that this knowledge had no impact on his decision since everyone is entitled to exercise their rights. He also testified that nothing in the record suggested that his supervisor's actions were a result of retaliation for protected EEO activity. HT1 at 49.

CC Oddo testified that she became aware of the appellant's first complaint as early as the latter part of 2016, when Deputy General Counsel Meghan Flanz (DGC Flanz), her supervisor at that time, mentioned it to her in passing. HT1 at 136-37. She was also aware of his second complaint since she provided an affidavit in response to it and, the appellant's counsel had shared it with her. HT1 at 137. However, CC Oddo testified that this knowledge did not factor into her decision to propose the appellant's removal. HT1 at 138.

DCC Duncan testified that as to the appellant's first complaint, she was notified of it by the appellant when he told her that his attorney had instructed him to do so. HT1 at 199-200. Later, she became aware of his second complaint since she was asked to give an affidavit in response to it. HT1 at 200. Finally, she testified that the appellant's protected EEO activity did not factor into her decision to give him an "unacceptable" performance rating. HT1 at 201.

On the other hand, when asked whether he believed his removal was retaliation for his protected EEO activity, the appellant testified as follows:

> That's hard to put a finger on, …, it's something that, …, would have to be implied. But honest to God – again, it's speculation. I don't see how it could not have had any kind of influence on the way I was treated.

HT2 at 112.

Considering all the record evidence, I find that the appellant did not show by preponderant evidence that retaliation was a motivating factor in his removal. The appellant provided no direct evidence that the agency took its removal action based on retaliation, nor did he provide any persuasive circumstantial evidence, such as comparative or other evidence giving rise to an inference of retaliation. Although I have considered the appellant's claim that CC Oddo's decision to restrict his work hours is indicative of retaliatory animus because it allegedly set him up for failure, I find that this claim lacks merit. The fact of the matter is that CC Oddo provided credible testimony to the effect that she was concerned about his excessive work hours in light of the fact his workload did not warrant it and wanted him to have a work/life balance. HT1 at 129-30; *see also supra* at 14-15.

Likewise, I am not persuaded by his claim that retaliatory animus is evident by virtue of the fact he received a "fully successful" mid-term appraisal in May 2017, but was rated "unacceptable" for FY17 in December 2017, after he engaged in protected EEO activity. As indicated above, DCC Duncan provided credible testimony to the effect that up until the issuance of the mid-term appraisal in May 2017, she was unaware of his GC LAWS deficiencies. HT1 at 190-91. Although

DCC Duncan was aware of the fact he had provided the wrong date to the attorney who appeared for him in his workers' compensation matter when she issued him his mid-term appraisal, the fact she did not discuss it with him when issuing the mid-term appraisal in May 2017 does not mean she was prohibited from doing so later with regard to his fiscal year appraisal. Had it been that 1 incident alone, it may not have warranted an "unacceptable" rating in May. Taken together, however, once she became aware of the GC LAWS deficiencies, as well as the others, nothing prohibited her from considering that incident later since the December 2017 rating covered the entire fiscal year.

In addition, despite the fact she failed to raise the untimely draft of a letter he was charged with drafting to a workers' compensation chief administrative law judge in May 2017, she provided credible testimony to the effect that his failure to provide the draft went beyond May 2017. HT1 at 190. As indicated above, he was issued a reprimand in July 2017 for his failure to submit a timely draft since he continued to request extensions up until then.

I find that there is no evidence that either CC Oddo or DGC Hipolit harbored a discriminatory animus toward the appellant despite the fact they were named in his second EEO complaint. Aside from the appellant's bare allegations, he has not established his claim of reprisal discrimination. The agency certainly had legitimate non-discriminatory reasons for its decision to remove him, i.e., his performance was demonstrably unacceptable. Therefore, notwithstanding the appellant claim in this regard, there is no evidence that the agency took action against him in reprisal for his having engaged in prior EEO activity. Accordingly, I find that the appellant has not established his affirmative defense of reprisal discrimination by preponderant evidence.

<u>The appellant failed to establish his affirmative defense of retaliation for whistleblowing activity by preponderant evidence.</u>

The appellant alleged that his removal was retaliation for having engaged in protected whistleblowing activity as defined by 5 U.S.C. § 2302(b)(8), consisting of the following disclosures:

> a) a December 12, 2017 letter from the appellant's attorney to David Shulkin, former Secretary of Veterans Affairs (a copy of which was also sent to U.S. Senators Charles C. Schumer; Kirstin Gillibrand; Dan Donovan; Johnny Isaakson; Jon Tester; Chairman Phil Roe, House Committee on Veterans Affairs; and Ranking Member Tim Walz, House Committee on Veterans Affairs), recounting the appellant's allegations of abuse of authority by DCC Duncan and CC Oddo;

> b) a copy of the above-referenced December 12, 2017 letter forwarded by the appellant's attorney on December 18, 2017 to CC Oddo, DGC Flanz, and GC Byrne; and

> c) complaints filed with the OSC and OAWP on February 22 and 28, 2018, respectively, copies of which were provided to CC Oddo and DCC Duncan[17].

*See* IAF, Tab 1.

In reviewing an allegation under the Whistleblower Protection Act of 1989 (WPA) and the Whistleblower Protection Enhancement Act (WPEA), the Board must examine whether the appellant proved by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8).

A protected disclosure is a disclosure that an appellant reasonably believes evinces a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Chambers v. Department of*

---

[17] For the reasons discussed in my November 21, 2018 Order Finding Appellant Has Raised Non-Frivolous Claim of Board Jurisdiction, *see* IRAF, Tab 20, these were the only disclosures found to be "non-frivolous claims" of Board jurisdiction. His gross mismanagement claims were dismissed. *See id.*

*the Interior,* 515 F.3d 1362, 1367 (Fed. Cir. 2008), *remanded to* 110 M.S.P.R. 321 (2009), *aff'd in part, rev'd in part on other grounds, remanded by* 602 F.3d 1370 (Fed. Cir. 2010).

A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the government evince one of the categories in section 2302(b)(8)(A). *Lachance v. White,* 174 F.3d 1378, 1381 (Fed. Cir. 1999), *cert. denied,* 528 U.S. 1153 (2000). To establish that the appellant had a reasonable belief that a disclosure met the criteria of 5 U.S.C. § 2302(b)(8), he need not prove that the condition disclosed actually established a violation under 5 U.S.C. § 2302(b)(8)(A); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evinced any of the situations specified in 5 U.S.C. § 2302(b)(8)(A). *Schnell v. Department of the Army,* 114 M.S.P.R. 83, ¶ 19 (2010) (citing *Garst v. Department of the Army,* 60 M.S.P.R. 514, 518 (1994)).

Next, he must show that the disclosure was a contributing factor in the agency's decision to take, fail to take, or threaten to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *See* 5 U.S.C. § 1221(e)(1); *Linder v. Department of Justice,* 122 M.S.P.R. 14, ¶ 6 (2014). When attempting to prove a protected disclosure was a contributing factor in a personnel action, the appellant only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs,* 93 M.S.P.R. 676, ¶ 10 (2003).

The most common way of proving the contributing factor element is the "knowledge / timing" test. *Ayers v. Department of Army,* 123 M.S.P.R. 11, ¶ 25 (2015); *Mason v. Department of Homeland Security,* 116 M.S.P.R. 135, ¶ 26 (2011). The knowledge/timing test provides for finding a contributing factor if the appellant is able to show that the acting agency official had knowledge of his protected disclosure and/or activity and the timing of the action is such that a

reasonable person could conclude that the disclosure was a contributing factor. *Mason*, 116 M.S.P.R. 135, ¶ 26. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures satisfies the timing component of the knowledge/timing test. *Schnell*, 114 M.S.P.R. 83, ¶ 22.

Where the appellant has met his burden of proving by preponderant evidence that he made a protected disclosure that was a contributing factor in the agency's personnel action against him, the Board must order corrective action unless the agency can prove by clear and convincing evidence that it would have taken the same personnel action absent the disclosure. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). In determining whether the agency has carried its burden, the Board will consider all the relevant facts and circumstances, including: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *See, e.g., Scoggins v. Department of the Army,* 123 M.S.P.R. 592, ¶ 26 (2016), citing *Carr*, 185 F.3d at 1323.

These are not discrete elements, each of which the agency must prove by clear and convincing evidence, but rather factors that should be weighed together to determine whether the evidence is clear and convincing as a whole. *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 44 (2011). Furthermore, the Federal Circuit has held that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The court further found that "[i]t is error for the [Board] to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." *Id.*

Turning to the case before me, an abuse of authority occurs when a Federal official or employee arbitrarily or capriciously exercises power and adversely affects anyone's rights or causes personal gain or advantage to himself or to someone he prefers. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015). There is no *de minimis* standard for abuse of authority as a basis of a protected disclosure under the WPEA. *See Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 11 (2011).

The December 12, 2017 letter to Secretary Shulkin, which was subsequently forwarded to the appellant's supervisors, alleged that upon the appellant's re-assignment to the CNPG, DCC Duncan and CC Oddo abused their authority by subjecting him to a hostile work environment[18]. IAF, Tab 1, Riders to OSC and OAWP complaints. In support thereof, he listed the following: (1) on December 29, 2016, DCC Duncan directed him to update approximately 130 cases by January 3, 2017 (which he claimed was an onerous task); (2) on May 29, 2017, DCC Duncan assigned him all future Reimbursable Health Insurance Payer Agreements (an onerous task ordinarily equally distributed between many attorneys); (3) on June 13, 2017, DCC Duncan directed him to either close out or provide updates for 33 NAN cases that he was not even assigned to (an onerous task); (4) approximately one week after June 13, 2017, he received another assignment for another 33 cases; (5) on July 5, 2017, DCC Duncan issued him a written reprimand for having failed to complete an assignment; (6) by email dated October 10, 2017, CC Oddo advised him that he was required to obtain advanced authorization from DCC Duncan whenever he wished to work more than one hour before or after his tour of duty or, on weekends, holidays or vacations, or while on leave and/or on a holiday; and (7) on December 7, 2017, DCC Duncan, with

---

[18] Although the appellant also alleged gross mismanagement, for the reasons noted in my November 21, 2018 Order Finding Appellant Has Raised Non-Frivolous Claim of Board Jurisdiction, *see* IRAF, Tab 20, that claim was dismissed.

the concurrence of CC Oddo, issued him a performance appraisal finding his performance "unacceptable" in 2 critical elements, with an overall "unacceptable" rating.  IAF, Tab 1, Riders to OSC and OAWP complaints.

However, the appellant's testimony in regards to why he believed DCC Duncan or CC Oddo were exercising their power arbitrarily or capriciously to adversely affect him or, to personally gain from doing so, was limited.  *See generally* HT2, appellant's testimony.  Consequently, I was not convinced he actually believed they were abusing their authority.  For instance, when asked to explain what he meant by these claims, the appellant testified as follows:

> I believed that both Anne-Marie Duncan and Mrs. Oddo were taking advantage of their positions as my supervisors to create an abuse of authority, hostile work environment, discrimination.  And I wanted to bring this to the attention of the Secretary of the VA with copies to the parties within this.  I -- you know, I was acting as a whistleblower.

HT2 at 68.  As such, I cannot conclude the appellant reasonably believed he disclosed an abuse of authority.  *See McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶ 7 (2008) (conclusory, vague, or unsupported allegations are insufficient to qualify as non-frivolous allegations of a protected disclosure); *Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006) (disclosures must be specific and detailed, not vague allegations of wrongdoing regarding broad or imprecise matters).

Had I found that he did, I would have also found that he satisfied the "knowledge/timing test" since DGC Hipolit knew of his disclosure to Secretary Shulkin, HT1 at 50-51, and the decision to remove him occurred 9 months later.  However, for the reasons already specified above, I find that the agency nonetheless showed by clear and convincing evidence that it would have taken the same personnel action even if the appellant had not engaged in this activity.  Here, the agency's evidence in support of its action was strong and there was no showing of a motive to retaliate.  In fact, the appellant testified just as he had

with respect to his other affirmative defense claims – when asked why he believed his disclosures were considered when he was removed, he admitted this was "speculation." HT2 at 112. Moreover, DGC Hipolit testified that despite knowing about the appellant's letters to Secretary Shulkin, GC Byrne, and DGC Flanz, and his OSC and OAWP complaints, this knowledge played no role in his decision to remove the appellant. HT1 at 52. He testified in this regard as follows:

> No, that wasn't a factor in my decision. People, you know, make complaints, … that just [is] not uncommon for people to complain and some of the secretaries will even encourage people that go out of their chain of command and bring complaints, …, directly to higher level officials. And it's just, …, part of the … business. People have the ability and the right to do that. So that's just part of the game and it doesn't bother me – it didn't bother me that he had done that and it wasn't a factor in my decision making.

*****

> I reviewed all the evidence in the file. That [referring to the OSC complaint] was in the file, so I did look through that complaint when I was making my decision. But the fact that he had filed a complaint with the OSC didn't, … bias me one way or the other as far as making my decision.

HT1 at 52-53.

Nor was any evidence presented showing that the agency does not take similar actions against employees who are not whistleblowers but who are otherwise similarly-situated. For all these reasons, I find that the appellant failed to establish his disclosures to Secretary Shulkin and others, as well as his OSC and OAWP complaints, constituted protected disclosures that contributed to the agency's decision to remove him from Federal service. Consequently, I find the appellant has failed to meet his burden of proof as to whistleblower reprisal.

<u>The appellant failed to establish his affirmative defense of harmful procedural error by preponderant evidence.</u>

According to the appellant, the agency's failure to abide by VA Handbook 5013, Part 1 and chapter 43 of title 5, consisting of its failure to do the following, constituted harmful procedural error:

a) did not utilize progressive discipline;

b) did not afford the appellant an adequate opportunity to improve;

c) did not implement a performance improvement plan (PIP) in violation of chapter 43 of title 5, thereby failing to provide the appellant with an opportunity to improve;

d) did not sufficiently and properly identify the appellant's specific performance deficiencies, the successful level of performance, the method that would be employed to measure that improvement, and the actions that the appellant had to take to sufficiently improve;

e) did not sufficiently and properly provide remediation to the appellant, including, but not limited to, counseling, training and other appropriate assistance;

f) relied upon matters occurring more than one year prior to the notice.

IAF, Tab 9.

To prove harmful procedural error, the appellant must prove that the agency committed an error in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.  *See* 5 C.F.R. § 1201.4(r).  The burden is upon the appellant to show that the agency committed an error and that the error was harmful, *i.e.*, that it caused substantial prejudice to his rights.

In support of his claim, the appellant argued that Section E of the performance appraisal for period 10/1/16-9/03/17 plainly states: "Prior to assigning an unacceptable level of achievement, ensure applicable policy requirements have been met as required in VA Handbook 5013, Part 1." Moreover, he asserted that VA Handbook 5013 still applies since "most of the appraisal period in question predated the new statute."  IAF, Tab 9 at 12.

For the reasons that follow, I disagree with the appellant. First, because 38 U.S.C. § 714(c)(3) expressly instructs that "the procedures of chapter 43 of title 5 shall not apply to a removal…under this section," I find that, as a matter of law, the agency merely need prove that the appellant's performance was unacceptable by substantial evidence. This decision by Congress to remove the procedural requirements of chapter 43 from actions taken under that authority includes the procedural requirement of the improvement period known as PIPs. In order for a performance-based action under section 714 to be sustained by the Board, the agency need only prove the appellant's performance was unacceptable by substantial evidence, as explained above. The agency need not establish the traditional chapter 43 requirements, which include that the agency provided the appellant an opportunity to improve prior to taking the performance-based action[19].

Second, the agency followed its policy as provided for in Human Resources Management Letter (HRML), 05-17-06. IAF, Tab 11 at 493-504. Specifically, the policy applicable to performance-based actions under 38 U.S.C. § 714 are found at section 7(b) of the HRML. *Id*. at 499. Section 7(b)(3) instructs management officials that a PIP will not be used to address performance deficiencies of a covered employee under the DVAAWPA, codified at 38 U.S.C. § 714, prior to imposing a performance-based action under 38 U.S.C. § 714. *Id*.

Third, the appellant cites no authority for his assertion that progressive discipline is required in performance-based actions in the agency's policy or in

---

[19] While the Board has yet to opine on the issue, I interpret this Congressional mandate to eliminate the agency's traditional Chapter 43 proof, i.e., the agency no longer need demonstrate that it must have:  1) a performance appraisal system approved by the Office of Personnel Management (OPM); 2) communicated the performance standards and critical elements of the employee's position to the appellant; 3) determined his performance to be unacceptable in one or more critical elements of his position; and 4) afforded him a reasonable opportunity to improve his performance to an acceptable level. *See* 5 C.F.R. § 432.104; *Martin v. Federal Aviation Administration*, 795 F.2d 995, 997 (Fed. Cir. 1986).

law.  Progressive discipline is to be considered only in disciplinary actions taken under chapter 75 of title 5.  Here, however, there is no penalty mitigation of performance-based actions and hence, progressive discipline is not relevant to performance-based actions under chapter 43.  Moreover, under 38 U.S.C. § 714, the Board may not mitigate penalties.

DGC Hipolit's testimony in this regard revealed that after the passage of the new DVAAWPA legislation, the agency interprets the statute as no longer requiring performance improvement plans, as provided for in the HRML.  HT1 at 40.  He also testified that nonetheless, the appellant was provided with various opportunities to address his performance deficiencies to no avail.  HT1 at 41; *see also* HT1 at 228-29, DCC Duncan's testimony.

As far as the appellant's attachments in support of his argument in this regard, *see* IAF, Tab 9 at 34-59, I agree with the agency's position that they are irrelevant to my consideration here.  First, the arbitrator's decision is in fact not precedential or instructive in the instant appeal and is not final or biding on the agency as it is currently pending before the Federal Labor Relations Authority. Moreover, that matter involved the union's challenge to a management action, not a performance-based action under 38 U.S.C. § 714.  Consequently, I find that the arbitrator's decision, as well as the Office of Personnel Management's guidance relating to the enjoinment of certain provisions of Executive Orders 13836, 13837, and 13839, are irrelevant to the issues before me.  For all of the reasons cited above, I find that the appellant failed to prove his affirmative defense of harmful procedural error by preponderant evidence.

The appellant failed to establish that the deciding official's failure to recuse himself constituted either a due process violation and/or harmful procedural error by preponderant evidence.

The essential requirements of due process are notice and an opportunity to respond, and a tenured public employee is entitled to oral or written notice of the

charges against him, an explanation of the agency's evidence, and an opportunity to present his side of the story. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-46 (1985).

In support of the appellant's argument here, he supplied a copy of an April 4, 2018 letter he sent, through his attorney, to DGC Hipolit, asking him to recuse himself from acting as the deciding official in his removal in light of the fact he previously rendered decisions pertaining to his grievances over his reprimand and performance appraisal, and, had been named by the appellant in one of his EEO complaints. *See* IAF, Tab 28. Relying on *Martinez v. Department of Veterans Affairs,* 119 M.S.P.R. 37, ¶ 6 (2012) and *Svejda v. Department of the Interior*, 7 M.S.P.R. 108, 110-12 (1981), the appellant claimed DGC Hipolit was not an unbiased decision maker and consequently, deprived him of his due process rights, which also constituted harmful procedural error. *See* IAF, Tab 28; *see also id.*, Tab 9 at 14.

I disagree. I note that those matters stand for the proposition that there is no general proscription of appointing a deciding official who has expressed a predisposition contrary to the appellant's interests. *See Martinez*, 119 M.S.P.R. 37, ¶ 6. Similar to the instant matter, in *Svejda*, the deciding official sustained the employee's unsuccessful performance rating prior to serving as the deciding official in a performance-based removal action. There, the Board found that this did not make the deciding official biased. *Svejda*, 7 M.S.P.R. 108, 110-12.

As the Board pointed on in *Martinez*, it is the appellant's burden to establish actual bias or intolerable unfairness. *Martinez*, 119 M.S.P.R. 37, ¶ 10. Here, I find that the appellant did not satisfy his burden of proof since DGC Hipolit testified that even serving as the deciding official in the grievances, he served approached the appellant's proposed removal "with a fresh and open mind," especially considering the fact this was a "very serious matter." HT1 at 43.

In light of the fact the Board has found that being familiar with the facts of a prior case related to a particular employee does not render a decision-maker biased, *Svejda*, 7 M.S.P.R. 108, at 111-12 and *Martinez*, 119 M.S.P.R. 37, ¶ 8, I find that there is nothing to suggest that DGC Hipolit was biased or, that he was unfair in rendering the decision he rendered here. For these reasons, I find that the appellant has failed to show, by preponderant evidence, that the fact DGC Hipolit acted as the deciding official here constituted harmful procedural error or a due process violation.

<u>Conclusion</u>

The agency has proved its charges by substantial evidence. The appellant failed to prove his affirmative defenses by preponderant evidence. Accordingly, the removal must be AFFIRMED.

## DECISION

The agency's action is AFFIRMED.


FOR THE BOARD:                    _____/S/_____
                                  Maria M. Dominguez
                                  Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **<u>April 22, 2019</u>**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes

final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently only one member is in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least one additional member is appointed by the President and confirmed by the Senate.

The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the

documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record.  A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first.  If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5

C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date this decision becomes final</u>. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision becomes final</u> as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and you wish to challenge the Board's rulings on <u>your whistleblower claims only, excluding all other issues</u>, then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

Exhibit C

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**NEW YORK FIELD OFFICE**

| | |
|---|---|
| LAWRENCE BRENNER,<br>          Appellant, | DOCKET NUMBER<br>NY-0714-19-0007-M-1 |
|          v. | |
| DEPARTMENT OF VETERANS<br>     AFFAIRS,<br>          Agency. | DATE: October 20, 2021 |

_Alan E. Wolin_, Esquire, Jericho, New York, for the appellant.

_Aaron L. Robison_, Esquire, Sacramento, California, for the agency.

**BEFORE**
Maria M. Dominguez
Administrative Judge

**INITIAL DECISION**

**INTRODUCTION**

This matter is before the Merit Systems Protection Board (Board), pursuant to a decision issued by the U.S. Court of Appeals for the Federal Circuit (Court or Federal Circuit), which remanded the appeal to the Board for further adjudication on March 9, 2021. _See_ Remand Appeal File (RAF), Tab 1. The Board has jurisdiction over this matter under 38 U.S.C. § 714. For the reasons set forth below, the decision of the Department of Veterans Affairs (VA or agency) to remove the appellant from his position of Attorney-Advisor, GS-0904-14, under the authority of 38 U.S.C. § 714, is REVERSED.

Background

Following a hearing[1] in which the appellant preserved an objection to no penalty analysis being allowed, *see* Hearing Transcript, Day 1 (HT1[2]) at 4-5 and 9, I affirmed his removal by initial decision (ID) dated March 18, 2019.  *See Brenner v. Department of Veterans Affairs*, Dkt. No. NY-0714-19-0007-I-1, Initial Appeal File (IAF), Tab 41.

Subsequently, on March 31, 2020, the Court issued a decision in *Sayers v. Department of Veterans Affairs,* 954 F.3d 1370 (Fed. Cir. 2020), finding that the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 (Act), codified at 38 U.S.C. § 714, cannot be applied retroactively.  In other words, an adverse action taken under the Act cannot be based on conduct which occurred before the Act's enactment.  *Sayers* also required that a penalty analysis under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 297 (1981) be performed.  *Sayers*, 954 F.3d 1370, 1376-77.

Nearly a year after the *Sayers* decision was issued, by Mandate dated April 30, 2021, the Court vacated and remanded the instant ID in light of *Sayers.  See Brenner v. Department of Veterans Affairs,* 990 F.3d 1313 (Fed. Cir. 2021).  By Order dated June 7, 2021, the Board remanded the case for further adjudication.  RAF, Tab 2.

Thereafter, during a status conference with the parties on July 19, 2021, I inquired as to whether a settlement was possible and, whether the parties believed additional testimony was necessary.  *See id.*, Tab 9.  Whereas the agency opined that additional testimony was necessary, the appellant was adamantly opposed to any.  *See id.*

---

[1] This matter was heard over the course of two days – December 12 and 13, 2018.

[2] The hearing transcript for day 1 of the hearing, December 12, 2018, will be referred to herein as "HT1."  The transcript for the second day of hearing, December 13, 2018, will be referred to herein as "HT2."

On August 11, 2021, I decided that additional testimony would not be permitted, although the parties could submit closing arguments, to which they could attach declarations from relevant witnesses. *See* RAF, Tabs 13 and 14.

The next day, on August 12, 2021, two additional Court decisions were issued, which resulted in my issuance of an August 13, 2021 "Notice of Changes to Framed Issues on Review." *Id.*, Tab 16. First, in *Connor v. Department of Veterans Affairs,* 8 F.4th 1319 (Fed. Cir. 2021), the Court held that the VA and the Board must apply the relevant *Douglas* factors in considering the reasonableness of penalties imposed under 38 U.S.C. § 714. Next, the Court in *Rodriguez v. Department of Veterans Affairs,* 8 F.4th 1290 (Fed. Cir. 2021), held that the burden of proof to be applied by the VA in an action taken under section 714 is "preponderant evidence,"[3] as opposed to "substantial evidence."[4]

Following these decisions, on September 3, 2021, I conducted a close of record conference with the parties, during which time the only issues accepted by the Board for further adjudication were framed as follows:

(1) Whether, pursuant to 38 U.S.C. § 714, the agency proved, by preponderant evidence, its 3 charges, based on the evidence of record that post-dates the Act (after June 23, 2017)?[5]

---

[3] A preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[4] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p). It is a lower standard of proof than preponderance of the evidence.

[5] The Court determined that in the ID, I erred in applying the Act to conduct that occurred prior to the Act's effective date. Specifically, it noted as follows:

*Compare* Act, 131 Stat. at 862 (providing an effective date of June 23, 2017), with, e.g., J.A. 72–73 (Proposed Removal) (in support of Charge I, citing thirty-one instances where Mr. Brenner did not reply to DMC requests in a timely manner, with twenty-five of the thirty-one requests occurring prior to the effective date of the Act, and two instances where

(2) Whether the agency proved by preponderant evidence, Charges 1 and 3, in light of Richard J. Hipolit's (Mr. Hipolit) admission that the proposing official applied the incorrect timeliness standard to the appellant's responses to the DMC?

(3) Whether the agency considered the relevant *Douglas* factors in determining the appropriate penalty?

(4) Whether the penalty of removal is supported by preponderant evidence, in accordance with *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370 (Fed. Cir. 2020)?

(5) Whether the Board's standard of review in this matter is "substantial evidence" as opposed to "preponderance of the evidence"?[6]

RAF, Tab 17.

The parties submitted their closing arguments on September 14 and 15, 2021, *see id.*, Tabs 19 and 20, after which they each responded to opposing counsel's respective arguments. *See id.*, Tabs 21 and 22. For the reasons that follow, after considering all the parties' submissions in this Remand matter, as well as the *Sayers*, *Connor*, and *Rodriguez* decisions, and the Initial Appeal File

---

Mr. Brenner did not timely respond to VA attorney requests after the effective date of the Act), 74–76 (in support of Charge II, citing Mr. Brenner's scheduling error and failure to immediately report that error in May 2017 before the effective date of the Act, and Mr. Brenner backdating seven GCLAWS entries in September 2017, after the effective date of the Act), 76–79 (in support of Charge III, citing thirty-six instances in which Mr. Brenner did not reply to DMC requests in a timely manner after the effective date of the Act). Accordingly, the MSPB erroneously applied the Act to conduct that occurred prior to the Act's effective date.

RAF, Tab 1 at 23-24. It also found that the agency had "not proven that Mr. Brenner was actually untimely" for Charges I and II, since Mr. Hipolit acknowledged that the proposing official had applied "the incorrect standard to determine whether Mr. Brenner's responses to the DMC were, in fact untimely." *Id.* at 24, n.8. Hence, it stated that: "On remand, the MSPB should, applying the correct [timeliness] standard, consider whether substantial evidence supports these charges. *Id.*

[6] In its closing argument, the agency raised concerns with how the issues were framed, *see id.*, Tab 19, although it did so after the time limit for doing so had already lapsed. *See id.*, Tab 17.

and transcripts, I find that the agency's removal was not in accordance with the law.

Applicable law

Under the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, the Secretary of the Department of Veterans Affairs may remove, demote, or suspend a covered individual who is an employee of the agency upon the Secretary's determination that the "misconduct of the covered individual warrants such removal, demotion, or suspension." 38 U.S.C. § 714(a)(1).

An administrative judge must sustain the agency's decision "if the decision is supported by substantial evidence." *See* 38 U.S.C. § 714(d)(2)-(3). This means the administrative judge must review both the factual underpinnings of the agency's charge and the choice of penalty for substantial evidence. *Sayers*, 954 F.3d 1370, 1375; *Rodriguez*, 8 F.4th 1290, 1301-02.

As explained in greater detail below, in *Rodriguez*, the Court distinguished between the burden of proof the VA must apply in taking the action – "preponderance of the evidence" – from the standard of review the Board uses to evaluate the VA's decision – "substantial evidence." *Rodriguez*, 8 F.4th at 1297-98.

Under 38 U.S.C. § 714(d)(2)(B), the Board may not mitigate the agency's chosen penalty. However, the Court has held that the VA and the Board still must consider the reasonableness of the penalty using the usual *Douglas* factors. *Connor*, 8 F.4th 1319, 1326 (citing *Douglas*); *see also Brenner*, 990 F.3d 1313, 1325. Because the Board cannot mitigate a penalty, if I determine that the penalty is unreasonable, I must remand to the VA for redetermination of the penalty. *Connor*, 8 F.4th at 1326-27; *Brenner*, 990 F.3d 1313, 1325.

<u>The agency failed to prove its 3 charges by preponderant evidence.</u>[7]

Taken together, what is left of Charges 1, 2, and 3 (after excluding performance that took place before the Act's enactment) are: eight instances of untimeliness with regards to Case Numbers 323224, 323232, 323221, 323222, 323223, 317052, and 323353, including two interactions with District Counsel (Charge 1); seven instances of "backdat[ing]" GCLAWS "to reflect same day service" despite the fact "same day service was not provided" (Charge 2); and thirty-six instances of untimeliness (Charge 3).  Although I have considered the agency's extensive argument in regards to whether the Federal Circuit's reading of Mr. Hipolit's and Kathleen Oddo's testimony pertaining to the seven-day response period pursuant to the Service Level Agreement and Charges 1 and 3 was correct, *see* RAF, Tab 20 at 9-16, I need not address it here since the Federal Circuit's decision will not be disturbed and, in any event, the agency's action is fatally flawed in its entirety.

As stated above, subsequent to the hearing in this appeal, the Federal Circuit issued its decisions in *Connor* and *Rodriguez*.  In the decision letter at issue in *Rodriguez*, the deciding official found that the three charges in support of the removal were all "supported by substantial evidence." *Rodriguez*, 8 F.4th at 1295.  On appeal to the Board in that matter, the administrative judge determined the charges were supported by substantial evidence and sustained the removal. *Id*.  However, on appeal to the Federal Circuit, the Court held that preponderant evidence is the proper standard of proof for the VA to apply in determining

---

[7] As indicated above under footnote 5, the Court found that I erred in applying the Act retroactively.  The first two issues (i.e., whether the agency proved its charges by preponderant evidence based on the evidence of record that post-dates the Act (June 23, 2017) and whether it proved charges 1 and 2 in light of Mr. Hipolit's admission that the wrong timeliness standard was applied), will be discussed herein together as these issues are intertwined.

whether an employee engaged in misconduct that justifies discipline under 38 U.S.C. § 714. *Rodriguez*, 8 F.4th at 1297-98.

Any references in § 714 to substantial evidence related solely to the Board's standard of review, not the burden of proof to be applied by the VA when making its decision. *Id*. Because the VA applied a substantial evidence standard of proof, the Court reversed the Board's decision in *Rodriguez* and remanded for further proceedings.[8] *Id*.

Similarly, in this Remand matter, the agency concedes that "at the time the Deciding Official issued the decision …, he utilized the substantial evidence standard as the applicable standard of proof." RAF, Tab 20 at 8.[9] However, it contends that with respect to Charge 1, even considering only the remaining specifications that occurred after the Act's enactment, the agency met its burden to establish unsuccessful performance by preponderant evidence. *See id.* at 16. I find the agency's argument in this regard unavailing, even considering the sworn declaration of deciding official Richard J. Hipolit.

In this regard, I note that the statutorily required decision letter is a critical part of the record upon which adverse actions, including actions taken under § 714, are based. Thus, irrespective of Mr. Hipolit's post-hoc characterization of how the unsuccessful performance meets the "preponderant evidence" standard, the actual language used in the letter is important and this appeal represents no exception.

---

[8] The court also reversed the Board's decision because the VA and the Board failed to consider the *Douglas* factors in determining the reasonableness of the penalty, citing *Sayers* and *Connor*. *Rodriguez*, 8 F.4th at 1301-03.

[9] References to page numbers herein are made to the numbers that were affixed onto the pages when they were electronically filed, rather than to any other page numbers found on the documents. The electronically-affixed page numbers are located on the bottom, right-hand side, of the documents referenced.

Here, as in *Rodriguez*, the deciding official expressly stated in the decision letter that he found "that substantial evidence supports Charges I, II, and II." IAF, Tab 10 at 24.  As stated above, the agency concedes as much.  The letter made no mention of the preponderant evidence standard, much less of any indication that the deciding official considered the evidence presented to him met a standard of proof higher than substantial evidence.  *See id.* at 24-28.  Therefore, the decision letter, his testimony, and his declaration dated September 14, 2021, RAF, Tab 20 at 22-27, all demonstrate that he analyzed the evidence supporting that charge, as well as the remaining two charges, under the substantial evidence standard at the time he rendered his decision.  Thus, there is no indication he considered the evidence presented to him sufficient to meet a higher standard of proof at the time he made his original decision.

Moreover, I reject the agency's assertion that it can satisfy the proof requirements set forth in *Rodriguez* by an affidavit from the deciding official – post-hearing – addressing his analysis of the evidence under a preponderant evidence standard.  Pursuant to *Rodriguez* and consistent with the Board's standard of review in actions taken under § 714, the issue to be decided is whether the deciding official used the correct standard (i.e., preponderant evidence) <u>when he made the decision</u>, not his post-hoc justification.  *See McCollum*, 417 F.3d 1332, 1339 ("Because [the petitioner] is challenging the removal decision itself, the appropriate standard of review before the Board is whether that decision was in accordance with law.").

<u>The agency failed to prove that it considered the relevant *Douglas* factors as required by *Sayers* and hence, the penalty of removal is not supported by preponderant evidence.[10]</u>

In light of my finding that the agency failed to prove its charges by preponderant evidence, I need not decide whether the VA properly considered the reasonableness of the removal penalty pursuant to *Connor*. However, assuming I had found that the agency's charges were supported by preponderant evidence, I would nonetheless find that the agency failed to consider the *Douglas* factors, as required by *Sayers* and the Court's decisions in *Brenner* and *Connor* and hence, that its decision was not in accordance with law.

During his testimony, Mr. Hipolit testified that he did not consider the *Douglas* factors because they "are not applicable under our current procedure." HT1 at 90. Although he indicated in his decision letter that the performance deficiencies were egregious, *see* IAF, Tab 10 at 26-27, there is nothing to evince that Mr. Hipolit actually considered the *Douglas* factors, especially in light of his admission that failed to do so. HT1 at 90. Moreover, the record is devoid of any *Douglas* factor worksheet and, contrary to his after-the-fact declaration that he did consider them, *see* RAF, Tab 20 at 26, he previously told the Board that he did not consider them, HT1 at 90, which makes his declaration unworthy of belief.

<u>The Board's standard of review is "substantial evidence" but the VA must nonetheless prove its charges and chosen penalty by "preponderant evidence."</u>

I have considered the agency's argument that the Board is required to review its adverse action under the "substantial evidence" standard and hence, it

---

[10] The two issues (i.e., whether the agency considered the relevant *Douglas* factors and hence, whether the penalty of removal is supported by preponderant evidence), will be discussed herein together as these issues are also intertwined.

is not required to "prove" before the Board that the charges are supported by "preponderant" evidence. *See* RAF, Tab 22 at 4-5.

While I agree that the Board's standard of review is by "substantial evidence," the *Rodriguez* Court explained that the agency must "prove" by "preponderant evidence" its charges and chosen penalty before the Board. *Rodriguez*, 8 F.4th 1290, 1296-1301. There, the Court determined that the deciding official had "found that all three charges against Mr. Rodriguez 'were supported by substantial evidence.'" *Id.* at 1298.

The Court noted that the administrative judge below had "concluded that there was no reason to require a different standard from the agency when making its initial disciplinary determination." *Id.* On appeal to the Court, the agency had defended the administrative judge's determination that substantial evidence is the appropriate standard of proof for the VA to apply in employee disciplinary actions instituted under § 714. However, the Court found that even where "substantial evidence" is the standard of review, the VA must nonetheless prove its charges and penalty by "preponderant evidence." *Id.* In this regard, it reasoned as follows:

> We disagree [with the administrative judge's determination that substantial evidence is the appropriate standard of proof for the DVA to apply in adverse actions under § 714]. The references to "substantial evidence" in section 714 are all explicitly directed to the standard of review to be applied by administrative judges and the Board. Those references do not address the standard of proof to be applied by the DVA in making disciplinary determinations, nor does the remaining text of section 714 explicitly address the standard of proof in proceedings before the DVA. There is therefore no force to the government's reliance on the plain language of section 714 to support its argument that substantial evidence is the proper standard of proof for the DVA to apply in disciplinary actions governed by that statute.
>
> To the contrary, the language of section 714 implies that the proper standard is the preponderance of the evidence. Section 714 provides that an employee may be removed, demoted, or suspended "if the Secretary determines the performance or misconduct of the covered

individual warrants" such action. In the case of a disciplinary action based on misconduct, the requirement that the Secretary "determine[ ]" that the misconduct in question warrants disciplinary action implies that the Secretary must find that it is likely, i.e., more likely than not, that the employee has engaged in the misconduct that justifies the proposed discipline.

More fundamentally, the government's argument is inconsistent with the well-established distinction between a burden of proof and a standard of review. "Preponderance of the evidence" is a burden of proof, while "substantial evidence" is a standard of review.

\*\*\*\*\*

Courts have consistently drawn the same distinction. As the Supreme Court stated in *Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), "[t]he elementary but crucial difference between burden of proof and scope of review is, of course, a commonplace in the law." The D.C. Circuit summarized the distinction between the two standards succinctly in *Whitney v. SEC*, 604 F.2d 676 (D.C. Cir. 1979), where the court wrote:

> [T]he burden of proof and the scope of review in administrative law cases, as in ordinary judicial proceedings, are separate matters. The former is the measure of belief which legally must exist in the mind of the trier of fact in order to sustain a finding. The scope of review, of course, marks the bounds of a reviewing court's authority to set aside factual findings, and review is customarily limited to ascertaining whether there is enough evidence of the legally correct sort to save the findings from irrationality. *Id.* at 681 (footnote omitted); *see also Collins Secs. Corp. v. SEC*, 562 F.2d 820, 823 n.12 (D.C. Cir. 1977) ("[T]he 'substantial evidence' standard does not in any way dictate the appropriate burden of persuasion to be applied in a proceeding before the agency.").

Preponderance of the evidence has long been recognized as the traditional burden of proof in civil administrative proceedings. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 389–90, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (preponderance of the evidence is the normal burden of proof in civil proceedings); *Steadman v. SEC*, 450 U.S. 91, 101 n.21, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) ("The use of the 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings." (quoting *Sea Island Broad. Corp. of S.C. v. FCC*, 627 F.2d 240, 243 (D.C. Cir. 1980))).

In *Charlton v. FTC*, 543 F.2d 903 (D.C. Cir. 1976), the court addressed an issue similar to the one before us and held that "substantial evidence" is not the proper burden of proof in a disciplinary proceeding before an agency. In that case, the FTC had determined that the appropriate burden of proof in a disciplinary action was substantial evidence. The court firmly rejected that view. Describing substantial evidence as "a totally incorrect standard of proof in passing on Charlton's blameworthiness," the court ruled that the agency "faltered grievously" in holding that its decision on a disciplinary action could be based on substantial evidence rather than a preponderance of the evidence. *Id.* at 906–07.

The *Charlton* court explained that on judicial review of agency action, administrative findings must be sustained when supported by substantial evidence on the record as a whole, but "that rule implicates only the reviewing court; the yardstick by which the agency itself is to initially ascertain the facts is something else again. ... [I]n American law a preponderance of the evidence is rock bottom at the factfinding level of civil litigation. Nowhere in our jurisprudence have we discerned acceptance of a standard of proof tolerating 'something less than the weight of the evidence.' " *Id.* at 907 (footnote omitted); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 379–83 (Fed. Cir. 1983) (Nies, J., concurring).

In *Steadman v. SEC*, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), the Supreme Court grappled with the poorly worded language of section 7(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 556(d), which provided that a "sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." Despite the use of the term "substantial evidence," the Court declined to interpret the statute as adopting "substantial evidence" as the burden of proof for proceedings governed by section 7(c). Relying on the words "in accordance with," the Court held that the agency's decision must be " 'in accordance with' the weight of the evidence, not simply supported by enough evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' " *Steadman*, 450 U.S. at 98–99, 101 S.Ct. 999 (quoting *Consolo v. FMC*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). Thus, even in the face of the statute's explicit use of the term "substantial evidence," the Supreme Court refused to substitute

that standard for "the traditional preponderance-of-the-evidence standard" as the burden of proof. *Id.* at 102, 101 S.Ct. 999.

In arguing that "substantial evidence" is the proper burden of proof for the DVA to apply in making disciplinary determinations in section 714 cases, the government relies on a footnote in *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1374 n.4 (Fed. Cir. 2020). In that footnote we observed, correctly, that "nothing in [section 714] compels the VA to apply a substantial evidence standard for removal rather than a preponderance standard." *Id.* In dictum, we then added that "nothing [in the statute] prevents the VA from doing so," and that because the statute "leaves the proper standard to the VA's discretion, the VA did not err by choosing substantial evidence review." *Id.*

To the extent the government argues that we are bound by *Sayers's* suggestion that the DVA is free to apply substantial evidence as the burden of proof in section 714 cases, we disagree. The footnote containing that suggestion is dictum, as it was not necessary to our analysis of section 714 and our conclusion that the statute could not be applied retroactively to Dr. Sayers. *See Sayers*, 954 F.3d at 1382.

*Rodriguez*, 8 F.4th 1290, 1298-1300. In light of the above, although I find that the Board's standard of review is "substantial evidence," I nonetheless find that the VA was required to prove its charges and penalty by "preponderant evidence."

<u>The removal action must be reversed because it was not taken in accordance with law.</u>

"When an appealable action is unlawful in its entirety, i.e., there is no legal authority for the agency's action, the Board will reverse such an action if the appellant shows it was 'not in accordance with law' under 5 U.S.C. § 7701(c)(2)(C)." *See Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 684 (1991); *McCollum v. National Credit Union Administration*, 417 F.3d 1332, 1339 (Fed. Cir. 2005); *see also Handy v. U.S. Postal Service*, 754 F.2d 335 (Fed. Cir. 1985) (explaining 5 U.S.C. § 7701(c)(2)(C) "is directed to the decision itself").

Here, there is no dispute that the agency's action was effected under a substantial evidence test. The VA had no legal authority to take an action under

§ 714 based merely on substantial evidence.  Because I find that the agency failed
to apply the correct burden of proof (i.e. preponderant evidence) or consider the
relevant *Douglas* factors in determining the penalty of removal for unacceptable
performance in the critical elements of "timeliness" and "professional
responsibility and accountability," I must reverse the decision as not in
accordance with the law.[11],[12]  *See* 5 U.S.C. § 7701(c)(2)(C).

## DECISION

The agency's removal action is REVERSED.

## ORDER

I **ORDER** the agency to cancel the removal and to retroactively restore
appellant effective **September 28, 2018**.  This action must be accomplished no
later than 20 calendar days after the date this initial decision becomes final.

I **ORDER** the agency to pay appellant by check or through electronic funds
transfer for the appropriate amount of back pay, with interest and to adjust
benefits with appropriate credits and deductions in accordance with the Office of
Personnel Management's regulations no later than 60 calendar days after the date
this initial decision becomes final.  I **ORDER** the appellant to cooperate in good
faith with the agency's efforts to compute the amount of back pay and benefits

---

[11] The agency cited initial decisions issued by other Administrative Judges to support
its claim that I should affirm based on the sworn affidavits of Mr. Hipolit and Ms.
Oddo.  *See* RAF, Tab 22.  However, Board initial decisions have no precedential value
and are not controlling authority. *Rockwell v. Department of Commerce*, 39 M.S.P.R.
217, 222 (1988).  Nevertheless, those initial decisions are not persuasive because, here,
the VA's removal decision is reversed as not in accordance with law for failing to apply
the correct burden of proof and, for failing to properly consider the reasonableness of
the penalty.

[12] *Rodriguez* supports that the agency may not be precluded from retaking a new action
based on the same misconduct if the agency's deciding official subsequently
"determine[s] whether the evidence as to each of the charges against [the appellant]
satisfied the preponderance of the evidence standard of proof." *See Rodriguez*, 8 F.4th
at 1301; *see also Strope v. U.S. Postal Service*, 76 M.S.P.R. 539, 542 (1997).

due and to provide all necessary information requested by the agency to help it comply.

If there is a dispute about the amount of back pay due, I **ORDER** the agency to pay appellant by check or through electronic funds transfer for the undisputed amount no later than 60 calendar days after the date this initial decision becomes final. Appellant may then file a petition for enforcement with this office to resolve the disputed amount.

I **ORDER** the agency to inform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied. If not notified, appellant must ask the agency about its efforts to comply before filing a petition for enforcement with this office.

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. I **ORDER** the agency to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## INTERIM RELIEF

Although appellant is the prevailing party, I have determined not to order interim relief pursuant to 5 U.S.C. § 7701(b)(2)(A), because it is not available for prevailing appellants in appeals of removals taken under 38 U.S.C. § 714. *See* 38 U.S.C. § 714(d)(7).

FOR THE BOARD: _____/S/_____
                            Maria M. Dominguez
                            Administrative Judge

## ENFORCEMENT

If, after the agency has informed you that it has fully complied with this decision, you believe that there has not been full compliance, you may ask the Board to enforce its decision by filing a petition for enforcement with this office, describing specifically the reasons why you believe there is noncompliance. Your petition must include the date and results of any communications regarding compliance, and a statement showing that a copy of the petition was either mailed or hand-delivered to the agency.

Any petition for enforcement must be filed no more than 30 days after the date of service of the agency's notice that it has complied with the decision. If you believe that your petition is filed late, you should include a statement and evidence showing good cause for the delay and a request for an extension of time for filing.

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the parties may file a settlement agreement, but the administrative judge may vacate the initial decision in order to accept such an agreement into the record after that date. *See* 5 C.F.R. § 1201.112(a)(4).

## NOTICE TO APPELLANT

This initial decision will become final on **November 23, 2021**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-

day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

## NOTICE OF LACK OF QUORUM

The Merit Systems Protection Board ordinarily is composed of three members, 5 U.S.C. § 1201, but currently there are no members in place. Because a majority vote of the Board is required to decide a case, *see* 5 C.F.R. § 1200.3(a), (e), the Board is unable to issue decisions on petitions for review filed with it at

this time. *See* 5 U.S.C. § 1203. Thus, while parties may continue to file petitions for review during this period, no decisions will be issued until at least two members are appointed by the President and confirmed by the Senate. The lack of a quorum does not serve to extend the time limit for filing a petition or cross petition. Any party who files such a petition must comply with the time limits specified herein.

For alternative review options, please consult the section below titled "Notice of Appeal Rights," which sets forth other review options.

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the

earlier date of receipt.  You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt.  You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim.  The date of filing by mail is determined by the postmark date.  The date of filing by fax or by electronic filing is the date of submission.  The date of filing by personal delivery is the date on which the Board receives the document.  The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service.  Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party.  *See* 5 C.F.R. § 1201.4(j).  If the petition is filed electronically, the online process itself will serve the petition on other e-filers.  *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## ATTORNEY FEES

If no petition for review is filed, you may ask for the payment of attorney fees (plus costs, expert witness fees, and litigation expenses, where applicable) by filing a motion with this office as soon as possible, but no later than 60 calendar days after the date this initial decision becomes final.  Any such motion must be prepared in accordance with the provisions of 5 C.F.R. Part 1201, Subpart H, and applicable case law.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above.  5 U.S.C. § 7703(a)(1).

By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date this decision becomes final. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after this decision</u> <u>becomes final</u> as explained above.  5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3)** **<u>Judicial review pursuant to the Whistleblower Protection</u>** **<u>Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

Exhibit D

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**NORTHEASTERN REGIONAL OFFICE**

LAWRENCE BRENNER,                     DOCKET NUMBER
          Appellant,                  NY-0714-19-0007-B-1

          v.

DEPARTMENT OF VETERANS                DATE: April 16, 2024
    AFFAIRS,
          Agency.

**SUMMARY OF STATUS CONFERENCE**

I held a telephonic status conference on April 15, 2024, the purpose of which was to discuss the full Board's April 2, 2024 Remand Order. Present for the status conference were: Aaron L. Robison and Jennifer Sniadecki, Esq's., the agency's representatives, and Alan E. Wolin, Esq., the appellant's representative, as well as the appellant himself. This is not a verbatim reproduction of our discussion. If either party objects to the contents and/or accuracy of this summary, he must file any exception or objection within five days of his receipt of this order.

I discussed with the parties that pursuant to the Remand Order, during a supplemental hearing, I will be considering:

Whether the agency's error in applying the substantial evidence standard of proof to its original action constituted harmful procedural error? *See* 5 U.S.C. § 7701(a)(1), (b)(1); *Semenov*, 2023 MSPB 16, ¶ 24. I explained that the proper inquiry here is whether the agency's error in applying the incorrect standard of proof was likely to have caused the agency to reach a different conclusion from

the one it would have reached in the absence or cure of the error. *Semenov*, 2023 MSPB 16, ¶ 23.

In the event I find that the agency's error was not harmful, I will next consider whether the agency proved its charges by substantial evidence based only on evidence that postdates the June 23, 2017 effective date of the VA Accountability Act.

In the event I find that the agency proved its charges by substantial evidence, I will consider whether the penalty of removal is supported by substantial evidence and in accordance with *Connor v. Department of Veterans Affairs*, 8 F.4th 1319 (Fed. Cir. 2021).

We also discussed the possibility of settlement and the parties advised me that they will be consulting with one another. In the event they wish to utilize the Board's MAP program, they will advise me of same.

Finally, we discussed the fact that I will be holding a supplemental hearing but, that I will limit the subject matter to issues deemed relevant on remand. Note: The appellant objected to my holding a supplemental hearing. The matter was set down for a hearing and I will issue a hearing order under separate cover. The parties consented to a hearing by Zoom.


FOR THE BOARD:        _____

*Maria Dominguez*

Maria Dominguez
Administrative Judge

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

U.S. Mail

Lawrence Brenner
9902 Third Avenue
Brooklyn, New York 11209

<u>Appellant Representative</u>

Electronic Service

Alan Wolin
Served on email address registered with MSPB

<u>Agency Representative</u>

Electronic Service

Aaron Robison
Served on email address registered with MSPB

_____
04/16/2024
(Date)

_____
*Harriett E. Hines*
Harriett E. Hines
Paralegal Specialist

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

Case Number _____

Short Case Caption  In re: Lawrence Brenner _____

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on  06/21/2024 _____

by   ☐   U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
     ☐   Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Clerk, MSPB | mspb@mspb.gov |
| Allison Boyle<br>MSPB, General Counsel | allison.boyle@mspb.gov |
| Maria Dominguez<br>Administrative Judge, MSPB | maria.dominguez@mspb.gov |
| Aaron Robison<br>DVA Representative | aaron.robison@va.gov |
| Jennifer Sniadecki<br>DVA Representative | jennifer.sniadecki@va.gov |

☐   Additional pages attached.

Date: 06/21/2024 _____

Signature: _Jill Fieman_

Name:  Jill Fieman _____